In re Michael A. GODSEY, Sr. and Pat Still Godsey, Debtors.

Bankruptcy No. 389–06886.

United States Bankruptcy Court, M.D. Tennessee.

Dec. 23, 1991.

Marilee McWilliams, Nashville, Tenn., for debtors.

Jane B. Forbes, Franklin, Tenn., for trustee.

Barbara Holmes, U.S. Trustee, Nashville, Tenn.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

The following are findings of fact and conclusions of law. Bankr.R. 7052. In September 1989, Mr. and Mrs. Michael A. Godsey, Sr. (the Godseys) filed a Chapter 7 bankruptcy. During the pendency of this case, the Godseys settled a personal injury lawsuit for an amount that enabled the estate to pay both secured and unsecured creditors with interest as directed by 11 U.S.C. § 726(a)(5) (1991). The trustee will distribute excess funds, if they remain after this distribution of interest, to the debtors. The issue in this case is what rate of interest should the bankruptcy court use when 11 U.S.C. § 726(a)(5) applies.

This case is one of statutory interpretation of 11 U.S.C. § 726, which sets out the priorities for distribution of property in a Chapter 7 case. The general bankruptcy rule under 11 U.S.C. § 502(b)(2) is that creditors cannot recover for post-petition interest. Section 726(a)(5) is an exception to this general rule. Under this section, creditors are entitled to interest on their claims whenever there is a surplus: "such interest will be paid from the estate only if and to the extent that a surplus of assets would otherwise remain for return to the debtor at the close of the case." S.Rep. No. 989, 95th Cong.2d Sess. 97 (1978), *reprinted in* L. King, *Collier on Bankrupt-*

*cy,* app. 3, pt. VI [hereinafter *Collier's*]. The relevant statutory text reads:

(a) Property of the estate shall be distributed—

. . . . .

(5) fifth, in payment of interest *at the legal rate* from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4)˙of this subsection;

. . . .

11 U.S.C. § 726(a)(5) (1991) (emphasis added). The language of the section makes clear that the interest rate must be defined by some source of law. Because Congress did not define "the legal rate" in § 726, this court must look to other sources of law for either a definition of an interest rate or an indication that the court should use a certain source for that definition. There are several possible sources, including the legislative history of § 726, other sections of the Bankruptcy Code, the contract between the parties, state statutes, and case law.

The legislative history of § 726 contains neither a definition of a rate nor an indication of where to look for such a definition. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 97 (1978), *reprinted in Collier's,* app. 3, pt. VI; H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977), *reprinted in Collier's,* app. 2, pt. II.

■ The Bankruptcy Code does not define "the legal rate," but it does indicate where this court should look for a definition, or rather where this court should not look. In sections other than § 726, the Bankruptcy Code directs the courts to various sources of law including state law and the contract between the parties. For instance, § 506(b) requires that the court look to the contract between the parties to determine whether certain expenses should be part of allowed claims: "[T]here shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees,

costs, or charges provided for *under the agreement* under which such claim arose." (emphasis added).[1] This language is very different from that in § 726(a)(5). Therefore, this court finds that § 726(a)(5) is not referring to the contracts between the debtor and various creditors, but rather to a statute.

■ The Bankruptcy Code also contains instances in which Congress has given the trustee the same powers that state legislatures have granted to individuals outside bankruptcy. *See* 11 U.S.C. § 546(c) (1991) ("[T]he rights and powers of the trustee . . . are subject to any *statutory or common-law right* of a seller of goods. . . .") (emphasis added). The legislative history of § 546(c) refers expressly to the Uniform Commercial Code, a provision that state legislatures adopt and amend. S.Rep. No. 989, 95th Cong., 2d Sess. 86–87 (1978); *reprinted in Collier's,* app. 3, pt. VI; H.R.Rep. No. 595, 95th Cong., 1st Sess. 371–72 (1977); *reprinted in Collier's,* app. 2, pt. II. For other sections of the Bankruptcy Code that refer to state law, see 11 U.S.C. § 544(b) ("The trustee may avoid any transfer . . . that is voidable *under applicable law* by a creditor. . . ."); 11 U.S.C. § 546(b) ("The rights and powers of a trustee . . . are subject to *any generally applicable law* that permits perfection. . . .") (emphasis added). Clearly, Congress could have referred the courts to state statutes if it had intended such a result. Because the language of § 726(a)(5) is quite different from other provisions that refer to state law, this court will look to federal statutes to determine the applicable interest rate.

The United States Code discusses interest rates in several areas, *see, e.g.,* 15 U.S.C. § 683(b) (1991) (Small Business Administration loans); 20 U.S.C. §§ 5401(m)(2)(B), 5411(n)(2)(B) (1991) (repayment of scholarship obligations), and defines some interest rates for specific pur-

---

1. The court uses the example of § 506(b) for the limited purpose of showing that Congress is able to direct the court's attention to the contract. The court realizes that the Supreme Court has held that the "under the agreement" language does not modify "interest" in the context of nonconsensual liens. *See In re Ron Pair Enterprises,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Neither § 506(b) nor *Ron Pair* are controlling in this case.

poses, *see, e.g.*, 26 U.S.C. § 6621 (1991) (interest rates for overpayment and underpayment of taxes), but it does not define the phrase "the legal rate."

Without a clear statutory definition of "the legal rate" in the United States Code, this court will look to the federal statutory interest rate that is most closely related to the bankruptcy context, 28 U.S.C. § 1961 (1991). Section 1961 defines the interest rate applied to judgments rendered in federal district courts. Section 1961 provides:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment....

28 U.S.C. § 1961(a) (1991). The bankruptcy court, because it "constitute[s] a unit of the district court" under 28 U.S.C. § 151 (1991), *see In re Goldblatt Bros., Inc.*, 61 B.R. 459, 466 (Bankr.N.D.Ill.1986), is also governed by § 1961. Without deciding whether a judgment has been rendered in this case, *see In re Laymon*, 117 B.R. 856, 862 (Bankr.W.D.Tex.1990), this court finds that the federal judgment rate is most applicable to the § 726(a)(5) context given the language of that section and the language of other sections of the Bankruptcy Code.

This court's examination of the policy considerations, beyond the need to interpret a statute in accordance with its express language, mandate the use of the federal judgment rate. First, creditors of the estate are paid interest under § 726(a)(5) because of the delay inherent in the administration of the bankruptcy estate. *In re Laymon*, 117 B.R. at 860. This delay affects all creditors equally and is "not directly related to the prepetition agreements the debtor struck with its creditors." *Id.* The *Laymon* court continued, "The obligation is the bankruptcy estate's,

not the debtor's." *Id.* Furthermore, the risk of default is one of the major factors in determining contractual interest rates. Upon the filing of the bankruptcy petition, that risk is realized. Therefore, creditors are no longer entitled to compensation for this risk of default, but only for the time value of the money while the money is held by the bankruptcy estate. The federal judgment rate accurately reflects this time value of money.

The *Laymon* court also noted that postpetition interest should be distributed consistently "with the principle of equitable, ratable distribution of estate assets to estate creditors." *Id.* at 861. In contrast, use of the contract rate results in creditors with higher interest rates receiving a greater proportion of the distributed funds. This court would prefer to avoid encouraging high interest rates through such a result. Finally, this result will be relatively simple to apply, and it promotes a universal resolution in bankruptcy courts across the country.

There is authority supporting the use of the contract rate, but this court finds that, given the statutory language and the policy considerations in favor of the federal judgment rate, these cases are not persuasive. The district court in *In re A & L Properties*, 96 B.R. 287 (C.D.Cal.1988) reversed the bankruptcy court's finding that 28 U.S.C. § 1961 should apply. Although, the district court found no case authority directly addressing the issue, it relied on commentators to find that the "creditor is entitled to the agreed-upon rate." *Id.* at 290. The gist of the commentators' argument is that the debtor's retention of "nonexempt property prior to the payment of [the debtor's] valid debts[ ] is a legally startling and somewhat appalling result.... There does not appear to be any substantial policy consideration that would sanction this result." *Id.* (citing Fortgang & King, *The 1978 Bankruptcy Code: Some Wrong Policy Decisions*, 56 N.Y.U.L.Rev. 1148, 1152 (1981)). *See also In re Beck*, 128 B.R. 571 (Bankr.E.D.Okla.1991). This court, however, finds that policy considerations, as well as the language of the Bank-

ruptcy Code, do sanction the use of the federal judgment rate.

The creditors in this case may perceive this result to be a windfall to the debtor, but the ability to change this result lies with Congress. Further, this court is encouraged by the argument of the United States Trustee that the good faith filing requirements of the Bankruptcy Code will provide ample deterrence against debtors abusing the bankruptcy process when pre-petition rates exceed the federal judgment rate. *See In re Zick*, 931 F.2d 1124, 1127–28 (6th Cir.1991).

The United States Trustee has stated that this "court may adjust any resulting inequities" if funds remain after distribution of interest to creditors at the federal judgment rate. One court has discussed the possibility of a second "cut" in this situation. *See In re Laymon*, 117 B.R. at 862–63. The language of Congress in both the Bankruptcy Code and § 1961 makes no mention of such a "second cut." Not only is such a tactic unsupported by statute, it would lead to further confusion and complexity. Therefore, this court declines to exercise its equitable power and directs the trustee to distribute interest to the creditors from the date of filing, to the date of payment.

IT IS, THEREFORE, SO ORDERED.

### ORDER

For the reasons stated in the memorandum entered contemporaneously herewith, the court finds that trustee shall pay interest to the creditors in this case at the rate specified in 28 U.S.C. § 1961 (1991).

IT IS SO ORDERED.