In re Juana Beth BEGUELIN, Debtor.

Juana Beth BEGUELIN, Appellant,

v.

VOLCANO VISION, INC., Annabelle Savage, Chapter 13 Trustee, Appellees.

BAP No. NV–97–1148 RORy.
Bankruptcy No. 96–31393–GWZ.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 20, 1998.

Decided April 10, 1998.

Geoffrey L. Giles, Reno, NV, for Juana Beth Beguelin.

Jeffrey L. Hartman, Hartman & Armstrong, Ltd., Reno, NV, for Volcano Vision, Inc.

Before: RUSSELL, OLLASON, and RYAN, Bankruptcy Judges.

### OPINION

RUSSELL, Bankruptcy Judge.

The bankruptcy court concluded that a creditor was entitled to postpetition interest on its claim in a chapter 13 [1] case from the date of the petition through and beyond the effective date of the plan ("gap interest"). The bankruptcy court also concluded that the "legal rate" of interest under § 726(a)(5) was the rate of interest provided under Nevada state law. We AFFIRM the court's decision with respect to the gap interest, and REVERSE and REMAND with respect to the bankruptcy court's definition of the legal rate of interest.

---

**1.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

## I. FACTS

Volcano Vision, Inc. ("Volcano") purchased real property located in Carson City, Nevada, from Juana Beth Beguelin (the "debtor"), who was the seller and real estate broker. Prior to the filing of bankruptcy, Volcano sued the debtor in state court for fraud and misrepresentation involving the real estate transaction ("the state court action").

The state court action was tried before a jury. On July 12, 1996, the jury found the debtor guilty of fraud and negligence, and returned a verdict against her for $90,000.00 in compensatory damages. The debtor filed a petition for relief under chapter 13 on July 15, 1996, before the jury could render its decision on punitive damages and before the judge in the state court action could make a determination on an award of attorneys' fees and costs and enter a judgment.

On July 16, 1996, Volcano filed a motion in the bankruptcy court for relief from the automatic stay. At the hearing, the bankruptcy judge lifted the stay so that the state court action could proceed to completion.

On August 7, 1996, the state court entered a judgment against the debtor for $90,000.00, together with prejudgment interest at the statutory rate from the date of service of the complaint on the debtor. The judgment included an award to Volcano of $10,650.00 in attorneys' fees and $3,903.00 in costs. The total amount of the judgment was $104,553.00. The debtor appealed the state court judgment to the Nevada Supreme Court, where the appeal is still pending. Volcano filed a proof of claim in the bankruptcy court for the total amount of its judgment on August 12, 1996.

The debtor filed a chapter 13 plan on July 29, 1996. Volcano was classified in the plan as a Class 5 creditor which would be paid $90,000.00 over 36 months without interest. Volcano filed an objection to confirmation of the debtor's plan on December 10, 1996. Volcano objected on the basis, among other things, that the plan did not provide for prejudgment interest at the statutory rate of 10.25% pursuant to Nevada Revised Statute ("N.R.S.") 17.130.[2]

On January 6, 1997, the debtor filed a brief in support of her plan.[3] In Volcano's reply to the debtor's brief, it relied on §§ 1325(a)(4) and 726(a)(5) to support its argument for the payment of interest on its entire proof of claim. Volcano argued that it would be inequitable to deny a judgment creditor its interest, as provided by state statute, in light of the debtor's concession that her estate was solvent.

The debtor submitted a memorandum on interest rates which articulated her position that Volcano was entitled to postpetition interest at the federal rate of 5%, rather than at the 10.25% rate provided under Nevada state law. The debtor argued that the payment of interest should be compensatory in nature to reflect the cost of money, and that a rate of interest higher than 5% would hinder her prospect of rehabilitation. In response to the debtor's memorandum, Volcano reasserted its position that the rate of interest provided in N.R.S. 17.130 was the proper measure of the legal rate of interest under § 726(a)(5).

The bankruptcy court conducted a plan confirmation hearing on February 5, 1997.

---

**2.** Nevada Revised Statute 17.130 (1997) provides:

**17.130 Computation of amount of judgment; interest.**

1. In all judgments and decrees, rendered by any court of justice, for any debt, damages or costs, and in all executions issued thereon, the amount must be computed, as near as may be, in dollars and cents, rejecting smaller fractions, and no judgment, or other proceedings, may be considered erroneous for that omission.

2. When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest from the time of service of the summons and complaint until satisfied, except for any amount representing future damages, which draws interest only from the time of the entry of the judgment until satisfied, at a rate equal to the prime rate at the largest bank in Nevada as ascertained by the commissioner of financial institutions on January 1 or July 1, as the case may be, immediately preceding the date of judgment, plus 2 percent. The rate must be adjusted accordingly on each January 1 and July 1 thereafter until the judgment is satisfied.

**3.** The debtor's brief in support of the proposed plan is not included in the record on appeal.

Following the hearing, the bankruptcy court issued findings of fact and conclusions of law, in which it found that interest continued to accrue from the petition date through and beyond the date of plan confirmation ("gap interest"). The court further determined that the bankruptcy estate was solvent, and that creditors were therefore entitled to interest on their claims at the legal rate. The court determined that the legal rate was the rate of interest provided under Nevada state law.

On March 12, 1997, the bankruptcy court entered an order which confirmed the debtor's plan, provided full payment on Volcano's judgment claim, including the gap interest, and allowed interest on Volcano's claim at the 10.25% rate of interest provided under Nevada state law. The debtor appeals.

## II. ISSUES

A. Whether the bankruptcy court erred in lifting the automatic stay to permit the state court to enter a judgment that included attorneys' fees and costs.

B. Whether the bankruptcy court erred in determining that interest on a creditor's claim continued to accrue from the petition date through and beyond the date of plan confirmation ("gap interest") in a solvent chapter 13 estate.

C. Whether the bankruptcy court erred in determining that the "legal rate" of interest under § 726(a)(5) was the rate provided under state law, rather than the federal rate of interest.

## III. STANDARD OF REVIEW

■ The bankruptcy court's decision to grant relief from the automatic stay is committed to its sound discretion, and is reviewed under the abuse of discretion standard. *In re Jewett*, 146 B.R. 250, 251 (9th Cir. BAP 1992) (citing *In re Shirley*, 134 B.R. 940, 942 (9th Cir. BAP 1992)). Under the abuse of discretion standard, the Ninth

Circuit Bankruptcy Appellate Panel cannot reverse the bankruptcy court's ruling unless it has a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. *Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir. 1996). Statutory interpretation is a question of law which is reviewed *de novo. In re Andersson*, 209 B.R. 76, 77 (6th Cir. BAP 1997).

## IV. DISCUSSION

A. *Whether The Bankruptcy Court Erred In Lifting The Automatic Stay To Permit The State Court To Enter A Judgment That Included Attorneys' Fees And Costs*

■ The debtor argues that the court's ruling lifting the stay was unclear.[4] Specifically, she questions whether the stay was lifted for the purpose of entering the $90,-000.00 state court judgment, or whether it was intended to also allow the state court to determine an award of attorneys' fees and costs. She asserts that no statutory basis exists for the bankruptcy court to have allowed Volcano's claim to include the state court award of attorneys' fees and costs.

Volcano asserts that the bankruptcy court granted relief from the stay to allow a full liquidation of its claim. As for the inclusion of attorneys' fees and costs in the judgment, Volcano maintains that a creditor is entitled to interest on attorneys' fees and costs which were incurred in the prosecution of the state court action. Moreover, Volcano argues that the court clearly stated during the hearing on the motion for relief from the stay that whatever judgment Volcano obtained in the state court would constitute its claim.

■ Section 362(d)(1) permits relief from the automatic stay for "cause." The Code does not define "cause" and, therefore, discretionary relief from the stay must be

---

4. The bankruptcy court's oral ruling granting relief from the automatic stay was effective and binding upon the parties, notwithstanding the fact that an order was not entered on the docket. *Noli v. C.I.R.*, 860 F.2d 1521, 1525–26 (9th Cir. 1988) (stating that the bankruptcy court's oral order lifting the automatic stay was valid and did not prohibit the tax court from reaching a decision and proceeding on the merits of the case even though an order was not entered on the docket by the bankruptcy court).

determined on a case by case basis. *In re Tucson Estates, Inc.,* 912 F.2d 1162, 1166 (9th Cir.1990) (citing *In re MacDonald,* 755 F.2d 715, 717 (9th Cir.1985)). The stay may be lifted as a matter of judicial economy. *In re Neal,* 176 B.R. 30, 34 (Bankr.D.Idaho 1994) (citing *In re Johnson,* 153 B.R. 49, 51 (Bankr.D.Idaho 1993)). *See also In re West-wood Broadcasting, Inc.,* 35 B.R. 47, 48–49 (Bankr.D.Hawai'i 1983) (granting the plaintiffs' motion for relief from the automatic stay to allow them to proceed with the state court trial to adjudicate all issues among the plaintiffs, debtors, and nondebtors involved in the suit); *In re Kemble,* 776 F.2d 802, 806 (9th Cir.1985) (lifting the stay for purposes of judicial economy to permit the completion of a trial pending in district court was not an abuse of discretion).

█ When the debtor filed her bankruptcy petition in this case, the jury trial in the state court action was completed except for the determination of punitive damages and the entry of the judgment which included attorneys' fees and costs. The bankruptcy court clearly authorized Volcano to obtain "whatever judgment [it could] get in the state court" in order for Volcano to determine its claim against the debtor's estate.

Volcano obtained a judgment for the total amount of $104,553.00, which included $90,-000.00 in damages, $10,650.00 in attorneys' fees and $3,903.00 in costs. The attorneys' fees and costs constituted part of the state court judgment because they were incurred prepetition and were not related to the bankruptcy case. It is clear from the transcript of the proceedings below that the bankruptcy court lifted the automatic stay to allow the entry of the judgment which would include attorneys' fees and costs. It is also clear that it was well within the bankruptcy court's discretion to lift the stay.

B. *Whether The Bankruptcy Court Erred In Determining That Interest On A Creditor's Claim Continued To Accrue From The Petition Date Through And Beyond The Date Of Plan Confirmation ("Gap Interest") In A Solvent Chapter 13 Estate*

█ As a general rule, interest on a claim ceases to accrue upon the filing of a bankruptcy petition. *See* § 502(b); *Nicholas v. U.S.,* 384 U.S. 678, 685, 86 S.Ct. 1674, 1680–81, 16 L.Ed.2d 853 (1966). An award of postpetition interest, however, may be allowed when the debtor is solvent. *In re Walsh Const., Inc.,* 669 F.2d 1325, 1330 (9th Cir.1982) (citing *United States v. Bass,* 271 F.2d 129, 130 (9th Cir.1959)). The debtor and Volcano agree that Volcano is entitled to interest on its claim because the debtor is solvent. They disagree, however, as to the period of time during which postpetition interest accrues in a chapter 13 case, and the rate at which it accrues.

The debtor contends that the bankruptcy court erred in finding that Volcano was entitled to the gap interest which accrued between the filing of the petition on July 15, 1996 and the confirmation of her plan on February 5, 1997. She contends that gap interest is available to unsecured creditors in chapter 11 cases, but is unavailable to unsecured creditors in chapter 13 cases because the provisions governing plan confirmation under the two chapters are dissimilar. The debtor refers to § 1325(a)(4) and asserts that interest should only begin to accrue on the effective date of the plan.

Chapters 11 and 13 both contain the "best interests of the creditor" test. *See* §§ 1129 and 1325. In a chapter 11 case, confirmation of a plan of reorganization is governed by the requirements set forth in § 1129. The plan must satisfy the "best interest of the creditor" test set forth in § 1129(a)(7), which states, in pertinent part:

(a) The court shall confirm a plan only if all of the following requirements are met:

. . . .

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

. . . .

(ii) will receive or retain under the plan on account of such claim or interest property of a *value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debt-*

*or were liquidated under chapter 7 of this title on such date; . . .*

11 U.S.C. § 1129(a)(7) (emphasis added).

In a chapter 13 case, the requirements needed for confirmation of a plan are set forth in § 1325. In language similar to § 1129(a)(7), § 1325(a)(4) states, in pertinent part:

(a) [T]he court shall confirm a plan if—

. . . .

(4) the *value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date* . . . .

11 U.S.C. § 1325(a)(4) (emphasis added).

 Sections 1129(a)(7) and 1325(a)(4) contain virtually identical language, and the effect of the provisions is the same. Both sections require that where a creditor possesses either an impaired or unsecured claim, the creditor must receive treatment that is at least as favorable as the creditor would receive under a chapter 7 liquidation.

The reference to a chapter 7 liquidation in both §§ 1129(a)(7) and 1325(a)(4) is significant to the availability of postpetition interest in chapter 11 and 13 cases because under § 726(a)(5), creditors are entitled to interest on their claims at the "legal rate" before the debtor receives any distribution. Section 726(a)(5) states, in pertinent part:

(a) [p]roperty of the estate shall be distributed—

. . . .

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, . . . .

11 U.S.C. § 726(a)(5).

 Pursuant to §§ 1325(a)(4) and 726(a)(5), postpetition interest in a chapter 13 case clearly accrues from the date of the petition through and beyond the effective date of the plan.

C. *Whether The Bankruptcy Court Erred In Determining That The "Legal Rate" Of Interest Under § 726(a)(5) Was The Rate Provided Under State Law, Rather Than The Federal Rate Of Interest*

Having determined that Volcano is entitled to postpetition gap interest, we must next consider the meaning of the "legal rate of interest" applicable pursuant to § 726(a)(5). We note that courts have developed two approaches to the definition of the applicable legal rate of interest under § 726(a)(5): the "state law approach" and the "federal judgment rate approach."

 Under the state law approach, if a contract exists between the debtor and creditor that establishes an interest rate on the outstanding balance, the contract rate is the "legal rate." *In re Schoeneberg,* 156 B.R. 963, 972 (Bankr.W.D.Tex.1993). Alternatively, if a specific state statute exists that establishes a rate of interest for a creditor, the statutory rate is the "legal rate." *In re Shaffer Furniture Co.,* 68 B.R. 827, 831 (Bankr.E.D.Pa.1987). Under the federal judgment rate approach, the "legal rate" is established by 28 U.S.C. § 1961.[5] *See In re Godsey,* 134 B.R. 865, 867 (Bankr.M.D.Tenn. 1991).

Volcano calculated the interest on its claim at the Nevada statutory interest rate of 10.25% per annum. The debtor objected,

5. 28 U.S.C. § 1961 states, in pertinent part:
**28 U.S.C. § 1961. Interest**
(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

arguing that the federal judgment rate was the appropriate measure. The bankruptcy court determined that the legal rate was the rate to which a creditor would be entitled if no bankruptcy petition had been filed, and concluded that because property rights are determined by state law, the appropriate rate of interest to be allowed in this case was the rate provided under Nevada law.[6]

█ The debtor argues on appeal that the federal judgment rate found in 28 U.S.C. § 1961(a) is the appropriate legal rate of interest pursuant to § 726(a)(5). The debtor relies primarily on *In re Melenyzer*, 143 B.R. 829 (Bankr.W.D.Tex.1992), and cites *In re Godsey*, 134 B.R. 865 (Bankr.M.D.Tenn. 1991), among other cases, as further support for her position. We agree with the debtor that the federal judgment rate is the appropriate measure of interest under § 726(a)(5), as we are persuaded by the reasoning of *Melenyzer* and *Godsey*.

In *Melenyzer*, the chapter 7 trustee proposed to pay interest on a *pro rata* basis to the unsecured creditors from cash remaining in the estate. An unsecured creditor argued that he was entitled to "interest at the legal rate," which he defined as the contract rate of 18%. The bankruptcy court held that "interest at the legal rate" under § 726(a)(5) meant the federal judgment rate. 143 B.R. at 830.

The bankruptcy court focused on the use of the federal judgment rate as a means of ensuring fairness, equality, and predictability in the distribution of interest on creditors' claims, and on the use of a federal law to decide a federal issue. The court reasoned:

[U]se of the federal judgment rate not only assures a ratable distribution, but it also meets the requirement that federal law decide a federal issue. Using the federal judgment rate, moreover, affords all affected parties a predictable, easily ascertainable, nationally uniform rate and best comports with the analytical posture of claims *vis-a-vis* the federal bankruptcy.

143 B.R. at 833 (italics in original) (citations omitted).

In rejecting the state law approach, the *Melenyzer* court explained:

The problem with the state law approach is that different creditors will have different rates of interest, depending upon their contracts or the applicable statutory rate. One contract might provide for interest at 18%, another at 9%. One state statute might set the rate at 10%, another applicable statute a rate of 6%.

. . . .

Quite often, ... there are only enough assets to pay *some* interest to creditors, *not* enough to pay *all* creditors *all* the interest they claim at their contract or statutory rates. Using those rate [sic], some creditors would receive a disproportionately large percentage of the remaining assets compared to their underlying unsecured claims, to the prejudice not of the debtor, but of other, otherwise equally situated, unsecured creditors.

*Id.* at 832 (emphasis in original).

The bankruptcy court in *Godsey* similarly held that the federal judgment rate provided under 28 U.S.C. § 1961 was the "legal rate" of interest applicable under § 726(a)(5). 134 B.R. at 867. In *Godsey*, the debtors settled a

---

**6.** The bankruptcy court based its conclusion on three cases:

(1) *In re Schoeneberg*, 156 B.R. 963 (Bankr. W.D.Tex.1993), in which the chapter 11 estate was solvent and the court was called upon to determine what interest rate the debtor had to provide to a creditor upon both undersecured and unsecured claims for the gap period between the filing of the petition and the effective date of the plan. *Id.* at 969. The court held that the creditor was entitled to the interest rate set forth in its prepetition contract with the debtor. *Id.* at 972.

(2) *In re Beck*, 128 B.R. 571 (Bankr.E.D.Okla. 1991), in which sufficient assets existed in the chapter 7 estate to pay interest on the creditors' claims. The court held that where a contract existed between the debtor and the unsecured creditor, the contract rate of interest applied. *Id.* at 573.

(3) *In re San Joaquin Estates, Inc.*, 64 B.R. 534 (9th Cir. BAP 1986), in which the Panel held that it was an abuse of discretion for the trial court not to award postpetition interest to creditors at the legal rate if the estate were solvent. The Panel did not, however, provide a definition of the "legal rate" of interest to be allowed. *Id.* at 536.

lawsuit during the pendency of their chapter 7 case for an amount that enabled the estate to pay interest to both the secured and unsecured creditors. *Id.* at 865. The court explained its decision to apply the federal judgment rate of interest as follows:

> Because Congress did not define "the legal rate" in § 726, this court must look to other sources of law for either a definition of an interest rate or an indication that the court should use a certain source for that definition. . . .
>
> . . . .
>
> Without a clear statutory definition of "the legal rate" in the United States Code, this court will look to the federal statutory interest rate that is most closely related to the bankruptcy context, 28 U.S.C. § 1961 (1991). Section 1961 defines the interest rate applied to judgments rendered in federal district courts.

134 B.R. at 866–67.

The court also noted the practical aspect of the application of the federal judgment rate in the context of section 726(a)(5): "Finally, this result will be relatively simple to apply, and it promotes a universal resolution in bankruptcy courts across the country." *Id.* at 867.

The practicality and cost effectiveness which result from the use of the federal judgment rate under § 726(a)(5) are extremely significant. Use of the federal judgment rate for all creditors in a case provides bankruptcy trustees with an efficient and inexpensive means of calculating the amount of interest to be to paid to each creditor. It is not hard to imagine the administrative nightmare that bankruptcy trustees would otherwise face if they were required to calculate a different interest rate, based on a different source of interest rate, for each creditor.

At oral argument, counsel for Volcano argued that in some states the legal interest rate refers back to the contract rate under which a particular judgment creditor is subject. In such a situation, the trustee would have to determine the contract rate for various creditors. The burden of requiring a trustee to apply different rates of interest according to the rate provided under contract is a compelling reason not to have to rely on various state legal interest rates. The logistical difficulties and expense involved in doing so would be particularly burdensome in those cases that involve a large number of creditors from multiple jurisdictions.

For all of these reasons, we hold that the federal judgment rate is the appropriate measure of interest under § 726(a)(5).

## V. CONCLUSION

The bankruptcy court's oral order lifting the automatic stay clearly allowed Volcano to obtain a judgment in its pending state court action against the debtor that included an award of attorneys' fees and costs. The order lifting the stay is AFFIRMED.

The bankruptcy court's determination that Volcano was entitled to postpetition interest on its claim from the date of the debtor's petition through and beyond the effective date of the confirmed chapter 13 plan ("gap interest") is AFFIRMED.

The bankruptcy court's determination that the state law rate of interest was the "legal rate" applicable to Volcano's claim under § 726(a)(5) is REVERSED. We hold that "interest at the legal rate" under § 726(a)(5) is measured by the federal judgment rate. The matter is REMANDED for a recomputation of the amount of postpetition interest to which Volcano is entitled.