In re The **LEISURE CORPORATION,** Debtor.

**The Cannery Row Company, Appellant,**

v.

**The Leisure Corporation, Appellee.**

**BAP No. NC–98–1393–RPK.**
**Bankruptcy No. 96–56324–ASW.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 22, 1999.

Decided June 7, 1999.

---

**35.** Doc. # 1 (Designation of Agent).

**36.** Doc. # 5.

Jonathan C. Battey, Law Offices of Gray & Battey, Monterey, CA, for The Cannery Row Company.

Kathryn M. Infante, Campeau & Thomas, San Jose, CA, for The Leisure Corporation.

Before: RUSSELL, PERRIS, and KLEIN, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

The bankruptcy court entered an order denying a lessor's motion for relief from the automatic stay under § 362.[1] The order included a determination that the debtor in possession had validly exercised an option to extend its lease with the lessor, notwithstanding the existence of pre- and postpetition defaults under the lease. The lessor appeals. We VACATE and REMAND.

## I. FACTS

Appellee The Leisure Corporation ("Leisure" or the "debtor") operates The Spirit of Monterey Wax Museum. It leases its business premises, located at 700 Cannery Row Suite II, Monterey, California, from appellant The Cannery Row Company ("TCRC") under the terms of a lease ("Lease") executed by the parties in February 1996. The Lease included five successive one-year options to extend the Lease term, which originally ran from November 15, 1995, through November 14, 1996. During each term of the Lease, Leisure was required to pay minimum annual rent in seasonally adjusted monthly amounts, and to pay additional rent for advertising, replacement reserve and percentage rent based upon gross sales.

On June 29, 1994, prior to execution of the Lease, Leisure executed a promissory note ("Note") in favor of TCRC in the principal amount of $80,000.00. The Note was secured by personal property (wax figures located at the museum) under the terms of a Security Agreement executed on the same date as the Note. The Note and the Lease stated that a default under one was a default under the other.

Leisure exercised the first of its five one-year options on August 12, 1996, extending the Lease term to November 14, 1997. Several days later, on August 21, 1996, Leisure filed a chapter 11 petition.

Shortly thereafter, Leisure filed an adversary proceeding against TCRC, seeking damages for fraud and breach of the Lease for removal of the display signage used by Leisure to attract patrons to the museum (the "Sign Litigation"). Leisure also filed a motion under § 365 to extend the time within which to assume or reject the Lease ("motion to assume").[2] Trial in the Sign Litigation began in June 1997 and ended in June 1998, after approximately thirty non-consecutive days of trial. The Sign Litigation is presently under submission, and a decision on the motion to assume is trailing a decision in the Sign Litigation. Consequently, Leisure's time to assume or reject the Lease has been extended indefinitely.

Leisure attempted to exercise its second Lease option ("Option") in August 1997, by giving notice to TCRC and tendering a check in the required amount. TCRC returned the check one week later, claiming Leisure could not exercise the Option due to the alleged existence of material pre-

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. The parties and the bankruptcy court referred to this motion interchangeably as both a "motion to extend" and a "motion to assume." It will be referred to hereinafter as a "motion to assume" for convenience and consistency.

and postpetition defaults under the Lease.[3] TCRC contended that the defaults totaled $13,976.76, of which $6,192.76 represented postpetition defaults. Leisure disputed the amount and materiality of the defaults.

TCRC filed a motion for relief from the stay and for adequate protection in August 1997, which Leisure opposed. Following a hearing, the bankruptcy court entered an order (the "adequate protection order") denying relief from the stay and allowing Leisure to extend payment of its postpetition Lease obligations pending conclusion of the Sign Litigation.

TCRC filed a second motion for relief from the stay in October 1997. TCRC contended that the existing material defaults under the Lease and Note[4] precluded Leisure from exercising the Option; consequently, the Lease would expire at the end of the current Lease term on November 14, 1997. TCRC sought an order terminating the stay and permitting it to pursue its non-bankruptcy remedies after that date.

Leisure filed an opposition and a separate motion for modification of the adequate protection order. Its opposition disputed the amount and materiality of the defaults, and contended that TCRC's motion was premature because the pending Sign Litigation would determine whether or not (a) a default under the Lease had occurred, (b) Leisure was in arrears, and (c) Leisure had validly exercised the Option. Leisure argued that if the court were to find that Leisure was not in default under the Lease, then the exercise of the Option was timely. It further argued that *In re Circle K Corporation,* 127 F.3d 904 (9th Cir.1997), *cert. denied sub. nom.,* —— U.S. ——, 118 S.Ct. 1166, 140 L.Ed.2d 176 (1998), permitted it to exercise the Option without first curing its defaults.

TCRC's response argued that *Circle K* was inapplicable because the cases were factually distinguishable: the debtors in *Circle K* had material uncured pre-petition defaults and only *de minimis* postpetition defaults that had been cured promptly upon notice, whereas Leisure had material uncured postpetition defaults. TCRC contended that *Circle K* did not change a debtor's obligation under § 365(d)(3)[5] to timely perform its postpetition lease obligations. TCRC also contended that the Sign Litigation would not resolve any of the disputed Lease issues.

The bankruptcy court held a hearing on TCRC's motion on November 5, 1997. The court rejected TCRC's argument regarding *Circle K,* refusing to limit the

---

3. The Lease provided, in relevant part:
 ### Article 4
 ### TERM
 **4.1 Duration....**
 (a) **Option to Extend Term** .... provided that Tenant is not then in material default and that there is no uncured material default then in effect in the performance of any of Tenant's obligations under said Lease or under Tenant's Promissory Note in favor of Landlord dated June 29, 1994, in the face amount of Eighty Thousand Dollars ($80,000.00), or under the Security Agreement dated June 29, 1994, that secures said promissory note, Landlord hereby grants to Tenant five (5) Options to extend the Term of this Lease, for five (5) additional periods of one (1) year each (the "Option Terms"), which said Option Terms shall be subject to all of the provisions of this Lease, ...
 Monterey Cannery Shopping Center Lease, p. 2.

4. TCRC contended that in addition to the Lease defaults, Leisure was in default of its obligation to pay the balance due and owing under the Note. TCRC alleged that the terms of the Note required Leisure to pay the Note in full upon the sale of a Honduran island owned by Leisure and/or its principal, George Drucker. TCRC claimed that the island was sold in or about September 1994, the sale was concealed from TCRC, and Leisure failed to pay the $82,761.85 balance due and owing under the Note.

5. Section 365(d)(3) (West 1998) provides:
 The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title....

holding of that case to factual situations involving only pre-petition defaults. The court agreed with TCRC's "timely performance" argument, but noted that the entry of adequate protection orders containing specified payment schedules had already addressed that issue. The court then approved a modification to the payment schedule contained in the previous adequate protection order, and denied TCRC's motion without prejudice.

In December 1997, the court granted Leisure's motion to further modify the payment schedule pending a sale of a portion of its wax figures. A few days later, the court granted Leisure's *ex parte* motion for authority to sell the figures free and clear of liens, conditioned on its payment of the postpetition rent arrearages and $7,000.00 of the disputed pre-petition arrearages from the sale proceeds. Following court approval of the sale at a hearing in January 1998, Leisure paid TCRC the stipulated amount of pre- and postpetition arrearages from the sale proceeds.

TCRC filed an adversary proceeding in April 1998 (the "Note Litigation"), claiming that a default under the terms of the Note caused a default under the Lease at the time of the first option exercise in August 1996. The prosecution of the Note Litigation has been stayed pending a decision in the Sign Litigation.

On May 18, 1998 the bankruptcy court finally entered an Order Denying Relief From Automatic Stay ("Order"), denying TCRC's motion that had been heard in November 1997. The Order included a determination that Leisure had validly exercised the Option, stating in pertinent part:

1. The Cannery Row Company's Motion for Relief from Automatic Stay, regarding the Debtor's attempt on or about August 8, 1997, to exercise its Option to Extend its lease term for one year, is denied irrespective of any alleged pre-petition or post-petition defaults. It is further ordered that the Debtor can and did validly exercise its Option, which extended its lease term to November 14, 1998. Accordingly, the lease will not expire by its own terms on November 14, 1997.

2. The motion is denied as a matter of law according to *In re Circle K Corporation* (9th Cir.1997) Westlaw 652169. The motion is denied notwithstanding the existence of pre-petition and post-petition defaults under the Lease with The Cannery Row Company.

Order Denying Relief From Automatic Stay, p. 2.

TCRC timely appeals the Order.

## II. STANDARD OF REVIEW

 An order on a motion for relief from the automatic stay is reviewed for an abuse of discretion. *In re Beguelin*, 220 B.R. 94, 97 (9th Cir. BAP 1998) (citing *In re Jewett*, 146 B.R. 250, 251 (9th Cir. BAP 1992)). A bankruptcy court abuses its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence. *See In re Rainbow Magazine, Inc.*, 136 B.R. 545, 550 (9th Cir. BAP 1992). Statutory interpretation is a question of law reviewed *de novo*. *Beguelin*, 220 B.R. at 97.

## III. ISSUES

A. Whether the bankruptcy court abused its discretion in denying TCRC's second motion for relief from the stay.

B. Whether the court abused its discretion in denying the motion for relief from the stay based on its interpretation that *In re Circle K Corporation*, as a matter of law, allows a debtor to exercise a lease option postpetition despite uncured pre- and postpetition defaults.

## IV. DISCUSSION

A. *Whether The Bankruptcy Court Abused Its Discretion In Denying TCRC's Second Motion For Relief*

*From The Stay*[6]

 Relief from the stay is a discretionary matter decided on a case-by-case basis. *Beguelin*, 220 B.R. at 97. Decisions committed to a bankruptcy court's discretion will be reversed only if based on an erroneous conclusion of law or if the record contains no evidence on which the court could rationally have based its decision. *Jewett*, 146 B.R. at 251.

The bankruptcy court's denial of TCRC's motion rested in part upon the effect of the pending Sign Litigation and motion to assume on Leisure's ability to ultimately assume the Lease:

> If the Debtor wins and the leases were formed [sic], the Debtor may or may not be in default pre-bankruptcy or not for as great an amount as the lessor claims; that is, the Debtor's duty to pay rent may be or may not be excused by lessor's failure to install a sign, for example.

Transcript of November 5, 1997 hearing, pp. 14–15.

The court also considered the fact that the immediate issue before the court was adequate protection rather than assumption of the Lease:

> [TCRC'S COUNSEL]:—is the Court aware of any authority that says there can be material post-petition defaults and still exercise an option under the lease?
>
> THE COURT: But we're not at the option stage, the exercise of an option stage. See, if they cure—the question is whether I have a right to change the cure period. That's all we're talking about, not whether they can cure

at the end. Their motion to assume is pending. It's just on—it's just sitting—it's out there. And I'm not deciding their motion to assume now. That's not before me. So if they cured in one month or if they cured in five months, that's the issue before me.

> . . . .

> But we don't have an assumption issue for trial today. That motion is being carried along with the adversary.

*Id.* at 16.

 The court also based its decision on an erroneous interpretation of *Circle K,* as discussed in Section B *infra.* Although the potential impact of the pending Sign Litigation and motion to assume on the Lease dispute could provide an independent basis for denying the motion, we cannot affirm the order denying relief from the stay on that basis because we cannot determine what effect the court's erroneous interpretation of *Circle K* had on its decision to deny relief from the stay.

**B.** *Whether The Bankruptcy Court Abused Its Discretion In Denying The Motion For Relief From The Stay Based On Its Interpretation That In Re Circle K Corporation, As A Matter Of Law, Allows A Debtor To Exercise A Lease Option Postpetition Despite Uncured Pre- And Postpetition Defaults*

In the order denying relief from the stay, the bankruptcy court held that the debtor had validly exercised its option to renew its lease and that, under *Circle K,* pre- and postpetition defaults of obli-

---

**6.** Leisure argues that the appeal is premature because factual and legal issues concerning the alleged defaults will be determined in the pending Sign Litigation and Note Litigation. Appeal of the order denying relief from the stay is not premature because that order finally determined that the stay would not be lifted. The fact that pending litigation may later cause the court to lift the stay does not make an appeal of an order denying relief from the stay premature.

Leisure also argues that the appeal is moot because it paid all of the pre- and postpetition arrearages which were in issue at the November 1997 hearing on relief from the stay from the January 1998 sales proceeds. The appeal is not moot because the parties agreed during oral argument that the payment was made with a reservation of rights.

gations under the lease did not preclude the debtor from exercising the option. The issue before us is whether a debtor who is in postpetition default under the provisions of a lease may nonetheless renew an option and thereby preserve its right to assume the lease, despite language in the lease prohibiting renewal if there are defaults.

█ The Code allows the trustee or debtor in possession to assume or reject unexpired leases. 11 U.S.C. § 365(a). If the lease is for nonresidential real property, the lease is deemed rejected unless the trustee or debtor in possession assumes or rejects the lease within 60 days after entry of the order for relief, or within such time as the court for cause fixes. 11 U.S.C. § 365(d)(4). The trustee or debtor in possession is required to timely perform the obligations of the debtor until the lease is assumed or rejected. 11 U.S.C. § 365(d)(3). If the trustee or debtor in possession decides to assume, it must cure any defaults or provide adequate assurance that it will cure. 11 U.S.C. § 365(b)(1). "[T]he purpose behind § 365 is to balance the state law contract right of the creditor to receive the benefits of his bargain with the federal law equitable right of the debtor to have an opportunity to reorganize." *Circle K,* 127 F.3d at 909 (quoting *In re Circle K Corp.,* 190 B.R. 370, 376 (9th Cir. BAP 1995)).

The timely performance requirement of § 365(d)(3) was added to the Code in 1984. Before 1984, there was no time limit for assumption or rejection of an unexpired lease, nor any requirement that the trustee or debtor in possession perform the obligations of the lease pending assumption or rejection. As a result, landlords were sometimes faced with long delays while the trustee or debtor in possession decided whether to assume or reject, all the while being required to provide current services and the leased premises, without being entitled to current compensation for the tenant's continued possession. *In re Condominium Administrative*

*Svcs., Inc.,* 55 B.R. 792, 797 (Bankr. M.D.Fla.1985). Congress reacted to this situation by setting a time limit for assumption or rejection and requiring that the trustee or debtor in possession timely perform the obligations under the lease while deciding whether to assume or reject. *In re Mr. Gatti's, Inc.,* 164 B.R. 929, 932 (Bankr.W.D.Tex.1994).

Neither the pre-amendment Code nor the 1984 amendments addressed what happens when a debtor's lease comes up for renewal postpetition. In *Circle K,* the Ninth Circuit considered whether a debtor in possession could renew a lease postpetition, when there were prepetition defaults under the lease and some de minimis postpetition defaults. The lease prohibited renewal if there were defaults. The court held that the bankruptcy court had the power to allow the debtor to renew the lease without first curing the defaults. It reasoned that § 365, along with the automatic stay provisions of § 362, suspended termination of a lease that was in default, once the petition was filed. 127 F.3d at 909. Those provisions extend the debtor's opportunity to cure any defaults, which it must do in order to assume a lease, until the debtor has a chance to decide whether to assume or reject the lease. If the debtor decides to assume, the landlord will get the benefit of its bargain when the debtor cures the defaults. *Id.*

The court noted that, if a debtor could not renew a lease without curing the defaults, the basic purpose of § 365 would be frustrated. "The debtor would be denied the benefit of section 365's 'suspension of time' in order to determine whether to assume or reject the lease." 127 F.3d at 909. If the debtor were prohibited from renewing the lease because it did not cure defaults, the lease would expire and the debtor would be unable later to exercise the choice of assumption. If the debtor had to cure defaults in order to renew the lease, and later chose to reject the lease, the debtor would have been forced into granting a preference. *Id.* at 910. The

court noted that the practical effect of requiring cure in order to renew a lease would be that the debtor would have to make an early decision whether to assume or reject, thereby rendering the court's extension of time to decide whether to assume or reject illusory. The court concluded that the bankruptcy court should not be compelled to require a course of action that would deprive the debtor of "the opportunity to reorganize without prematurely burdening the estate with unexpired lease obligations." *Id.*

The situation in this case is somewhat different from *Circle K,* in that there are allegedly uncured postpetition defaults under the lease.[7] TCRC argues that the existence of material postpetition defaults distinguishes this case from *Circle K,* where there were only *de minimis* postpetition defaults that had been cured promptly upon notice. It reasons that § 365(d)(3) requires timely postpetition performance of lease obligations pending a decision to assume or reject, and that failure to timely perform should preclude the debtor from renewing the leases in contravention of the lease provisions prohibiting renewal upon default.

■ It is clear from the case law that, although § 365(d)(3) requires a trustee or debtor in possession to timely perform lease obligations pending a decision to assume or reject, there is no specified remedy for violation of that requirement. In *In re Southwest Aircraft Services, Inc.,* 831 F.2d 848 (9th Cir.1987), the court considered whether an extension of time to assume or reject must have been granted before the expiration of the 60 day statutory limit, or whether it is enough that the motion for the extension is filed within the 60 days. The creditor argued that, because the debtor had failed to timely perform as required under § 365(d)(3), the lease should be deemed rejected and

therefore there was no lease to consider assuming or rejecting. The court rejected that argument, noting that § 365(d)(3) "does not expressly state what consequences follow from a debtor's violation of its terms." It concluded that:

> We believe that Congress intended the bankruptcy courts to have the discretion to consider all of the particular facts and circumstances involved in each bankruptcy case and to decide whether the consequence of a violation of subsection (d)(3) should be forfeiture of the unassumed lease, some other penalty, or no penalty at all. Accordingly, we hold that the failure to make payments under subsection (d)(3) constitutes simply one element to be considered, along with all the other relevant factors, in determining whether cause exists under subsection (d)(4) to extend the 60-day period for assumption or rejection.

831 F.2d at 853, 854. It would be contrary to *Southwest Aircraft* to hold that postpetition defaults that violate subsection (d)(3) automatically and absolutely preclude the exercise of an option for renewal of a lease. Rather, postpetition defaults are one factor to be considered.

We therefore hold that *Circle K* does not compel a bankruptcy court to allow renewal when there is a postpetition default and that § 365(d)(3) does not absolutely prohibit renewal in the same circumstances. Instead, postpetition defaults should be a factor for the court to consider in deciding whether a debtor may renew a lease.

■ In determining whether a trustee or debtor in possession's postpetition renewal of a lease is effective, the bankruptcy court should consider any postpetition defaults and their causes along with the purposes of § 365 of preserving the debtor's opportunity to reorganize, while also protecting the landlord's right to current

---

7. The debtor disputes whether there are defaults and whether, if there are, the defaults are material. There were postpetition defaults in *Circle K* also, but the court recognized that those defaults were *de minimis,* and they were cured upon notice of the default. 127 F.3d at 910 n. 6.

payment for current services. Thus, in this case, the bankruptcy court erred in concluding as a matter of law that the debtor could renew the lease despite alleged postpetition defaults.

## V. CONCLUSION

The bankruptcy court erred in holding as a matter of law that alleged postpetition defaults did not preclude the debtor from exercising its option to renew the lease. Accordingly, the order is VACATED and REMANDED for the court to reconsider its denial of relief from the stay and determination that the renewal lease option has been validly exercised, taking into consideration the postpetition defaults in the lease, if any.

If there were postpetition defaults at the time of renewal, the court must exercise its discretion in deciding whether the scope of the default, the cause of the default, any subsequent cure of the default, and the significance of the lease to the reorganization are sufficient to outweigh the policy of § 365(d)(3) that the landlord has a right to timely payment postpetition.