In re Samuel Duke CARDELUCCI, Debtor.

Willem Onink, Marsha Onink, Appellants,

v.

Samuel Duke Cardelucci, Appellee.

No. 00–56541.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 16, 2002.

Filed April 12, 2002.

Fred K. Knez, John A. Boyd, Thompson & Colgate, Riverside, CA, for the plaintiffs-appellants.

William M. Burd, Karen Sue Naylor, Burd & Naylor, Santa Ana, CA, for the defendant-appellee.

Before: SCHROEDER, Chief Judge,McKEOWN, Circuit Judge, and ZILLY, District Judge.*

## OPINION

ZILLY, District Judge.

Appellants Willem and Marsha Onink appeal the district court's application of the federal interest rate as defined by 28 U.S.C. § 1961(a) to an award of post-petition interest pursuant to 11 U.S.C. § 726(a)(5). This appeal presents the narrow but important issue of whether such post-petition interest is to be calculated using the federal judgment interest rate or is determined by the parties' contract or state law. We conclude that 11 U.S.C. § 726(a)(5) mandates application of the federal interest rate. Accordingly, we AFFIRM.

Appellee Samuel Duke Cardelucci owns and operates several rubbish companies in Southern California. On January 15, 1993, a California state court jury found that Cardelucci had engaged in predatory pricing and was jointly and severally liable to the Oninks for unfair trade practices. The state court subsequently entered judgment in the amount of $5,423,825.50 plus interest calculated at the rate of 10% per annum in favor of the Oninks. The state court judgment was ultimately affirmed on appeal with the amount of damages modified to $5,273,147.50 plus interest at the applicable legal rate.

After judgment was entered in the state court action, Cardelucci filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the Central District of California. Cardelucci's Modification of Fourth Amended Plan of Reorganization provided for payment in full of the Oninks' claim with post-confirmation interest at the rate of 5% and post-petition interest at a rate to be determined under the provisions of the Bankruptcy Code. During subsequent proceedings before the bankruptcy court regarding the Plan, the parties agreed that the Oninks were entitled to post-petition interest but disputed whether the applicable interest rate was California's state statutory interest rate of 10% or the federal interest rate. The bankruptcy court held that the federal interest rate of approximately 3.5%, calculated pursuant to 28 U.S.C. § 1961(a), rather than the judgment rate provided for by state law, applied. Thereafter, the Oninks withdrew their objections to the Plan without prejudice to their right to appeal the interest rate determination and the bankruptcy court ordered the Plan confirmed. The Oninks appealed the bankruptcy court's determination to the district court which affirmed the bankruptcy court's ruling. This appeal followed.

■ This Court reviews de novo the district court's decision on an appeal from a bankruptcy court. *In re Gruntz*, 202 F.3d 1074, 1084 n. 9 (9th Cir.2000) (en banc). This Court applies the same standard of review applied by the district court. *In re Chang*, 163 F.3d 1138, 1140 (9th Cir.1998). Statutory interpretation is a question of law subject to de novo review. *In re Celebrity Home Entertainment, Inc.*, 210 F.3d 995, 997 (9th Cir. 2000).

---

* Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation.

■ Where a debtor in bankruptcy is solvent, an unsecured creditor is entitled to "payment of interest at the legal rate from the date of the filing of the petition" prior to any distribution of remaining assets to the debtor. 11 U.S.C. § 726(a)(5). The question presented by this appeal is whether "interest at the legal rate" means a rate fixed by federal statute or a rate determined either by the parties' contract or state law. The Bankruptcy Code does not define the term "interest at the legal rate" and there is a paucity of legislative history regarding this statutory provision.

Although no Court of Appeals has addressed this issue, bankruptcy courts have split over the correct interpretation of this phrase, finding that it either means one single rate as determined by 28 U.S.C. § 1961(a)(the "federal judgment rate approach") or is based on a contract rate or applicable state law (the "state law approach"). *Compare In re Dow Corning Corp.*, 237 B.R. 380, 394 (Bankr.E.D.Mich. 1999) (applying the federal judgment rate), *with In re Carter* 220 B.R. 411, 416–17 (Bankr.D.N.M.1998) (using the state law approach to determine the appropriate interest rate).

In *In re Beguelin,* 220 B.R. 94, 99(9th Cir.BAP1998), the Bankruptcy Appellate Panel of the Ninth Circuit squarely addressed the issue presented in this appeal. The BAP held that the federal judgment rate applied to post-petition interest. *Beguelin,* 220 B.R. at 100. Contrasting the state law and federal judgment rate approaches, the BAP concluded that the interests of "fairness, equality, and predictability in the distribution of interest on creditors' claims" as well as the interest in applying federal law to federal bankruptcy cases, required application of the federal judgment rate approach. *Id.* at 100–101 (citing *In re Melenyzer,* 143 B.R. 829 (Bankr.W.D.Tex.1992), and *In re Godsey,* 134 B.R. 865 (Bankr.M.D.Tenn.1991)).

While this Court is not bound by a B.A.P. decision, we find the reasoning of *Beguelin* to be persuasive and adopt it. *See Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 471 (9th Cir.1990).

■ The principles of statutory interpretation lend strong support to the conclusion that Congress intended "interest at the legal rate" in 11 U.S.C. § 726(a)(5) to mean interest at the federal statutory rate pursuant to 28 U.S.C. § 1961(a). Congress specifically chose the language "interest at the legal rate," replacing the originally proposed language "interest on claims allowed." *Report of the Commission on the Bankruptcy Laws of the United States,* H.R. Doc. No. 93–137, § 4–405(a)(8), (1st Sess.1973), *reprinted in* Collier App. Pt. 4(c), at 4–679. This Court "assume[s] that Congress carefully select[s] and intentionally adopt[s] the language" used in a statute. *Ebben v. Comm'r,* 783 F.2d 906, 916 (9th Cir.1986) (Beezer, J., concurring in part and dissenting in part). Thus, instead of a general statement allowing for awards of interest, Congress modified what type and amount of interest could be awarded with the specific phrasing "at the legal rate."

■ The definite article "the" instead of the indefinite "a" or "an" indicates that Congress meant for a single source to be used to calculate post-petition interest. *See, e.g., American Bus Ass'n v. Slater,* 231 F.3d 1, 4–5 (D.C.Cir.2000); *United States v. Kanasco, Ltd.,* 123 F.3d 209, 211 (4th Cir.1997); *In re Dow Corning Corp.,* 237 B.R. at 404; *Black's Law Dictionary* 1477 (6th ed. 1990) ("In construing statute, definite article 'the' particularizes the subject which it precedes and is word of limitation as opposed to indefinite or generalizing force 'a' or 'an' "). The use of "legal rate" indicates that Congress intended the single source to be statutory because the commonly understood mean-

ing of "at the legal rate" at the time the Bankruptcy Code was enacted was a rate fixed by statute. *See, e.g., Inv. Serv. Co. v. Allied Equities Corp.,* 519 F.2d 508, 511 (9th Cir.1975) (distinguishing "interest at the legal rate" as a rate defined by statute from a rate determined pursuant to the parties' contract); *In re Dow Corning Corp.,* 237 B.R. at 402 (citing cases). Congress' choice of the phrase "interest at the legal rate" suggests that it intended for bankruptcy courts to apply one uniform rate defined by federal statute. *See* 3 *Norton Bankruptcy Law & Practice* 2d § 73:7 n. 55 (1997 & Supp.2000) (stating "[i]nterest is set at the federal judgment rate as of the petition date"); 6 *Collier on Bankruptcy* ¶ 726.02(5) (15th ed. rev.1997) ("The reference in the statute to the 'legal rate' suggests that Congress envisioned a single rate, probably the federal statutory rate for interest on judgments.").

Additionally, using the federal rate promotes uniformity within federal law. Upon the filing of the bankruptcy petition, creditors with a claim against the estate must pursue their rights to the claim in federal court and entitlement to a claim is a matter of federal law. *See Bursch v. Beardsley & Piper,* 971 F.2d 108, 114 (8th Cir.1992) ("[O]nce a bankruptcy petition is filed, federal law, not state law, determines a creditor's rights."). Absent a timely objection, all claims filed against the bankrupt estate are "deemed allowed" as of the date of filing. 11 U.S.C. § 502(a). This allowed claim, like a judgment, gives the creditor a legal "right to payment" of a specific sum of money against the debtor. 11 U.S.C. § 101(5); 11 U.S.C. § 502(b). As of the date of the filing of the petition, creditors hold a claim, similar to a federal judgment, against the estate, the payment of which is only dependent upon completion of the bankruptcy process. In this respect, the purpose of post-petition interest makes the award analogous to an award of post-judgment interest. *See Kai-*

*ser Aluminum and Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835–36, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (stating that the purpose of post-judgment interest is "to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damages and the payment by the defendant") (citation omitted).

■ It has long been the rule that an award of post-judgment interest is procedural in nature and thereby dictated by federal law. *Hanna v. Plumer,* 380 U.S. 460, 473–74, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (stating that procedural matters arising in federal court are decided by federal law). This rule is best illustrated by the difference in treatment of pre-judgment and post-judgment interest in diversity actions. In diversity actions brought in federal court a prevailing plaintiff is entitled to pre-judgment interest at state law rates while post-judgment interest is determined by federal law. *See Northrop Corp. v. Triad Int'l Mktg., S.A.,* 842 F.2d 1154, 1155 (9th Cir.1988). In bankruptcy, an allowed claim becomes a federal judgment and therefore entitles the holder of the judgment to an award of interest pursuant to federal statute. *See In re Chiapetta,* 159 B.R. 152, 160–61 (Bankr. E.D.Penn.1993); *In re Melenyzer,* 143 B.R. at 833.

■ Lastly, applying a single, easily determined interest rate to all claims for post-petition interest ensures equitable treatment of creditors. An overriding policy consideration in an award of interest to a creditor is the balancing of equities among the creditors. *See Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 165, 67 S.Ct. 237, 91 L.Ed. 162 (1946) ("It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities

between creditor and creditor or between creditors and the debtor."). By using a uniform interest rate, no single creditor will be eligible for a disproportionate share of any remaining assets to the detriment of other unsecured creditors. *See Beguelin,* 220 B.R. at 100(citing *In re Melenyzer,* 143 B.R. at 832).

In addition to promoting fairness among creditors, application of the federal rate is the most judicially efficient and practical manner of allocating remaining assets. Calculating the appropriate rate and amount of interest to be paid to a myriad of investors has the potential to overwhelm what could otherwise be a relatively simple process pursuant to 11 U.S.C. § 726(a)(5). *See Beguelin,* 220 B.R. at 101 ("It is not hard to imagine the administrative nightmare that bankruptcy trustees would otherwise face if they were required to calculate a different interest rate, based on a different source of interest rate, for each creditor."); *see also, Katchen v. Landy,* 382 U.S. 323, 328, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (stating "a chief purpose of the bankruptcy laws is to secure a prompt and effectual administration . . . of the [bankruptcy] estate . . .") (citation omitted).

The Court recognizes that these two interests, fairness among creditors and administrative efficiency, may be of limited relevance in certain bankruptcy proceedings. Where there are only a few unsecured creditors seeking post-petition interest and there are sufficient assets to pay all claims for all interest, there will be no concerns regarding equity among creditors or practicality. In those instances, a debtor may receive a windfall from the application of a lower federal interest rate to an award of post-petition interest. Nonetheless "interest at the legal rate" is a statutory term with a definitive meaning that cannot shift depending on the interests invoked by the specific factual circumstances before the court. *See In re Thompson,* 16 F.3d 576, 581 (4th Cir.1994).

■ Appellants make a final argument that under the circumstances of this case, an award of interest pursuant to a federal statute violates substantive due process. Assuming, *arguendo,* that there is a substantive right to post-petition interest, Appellants' substantive due process claim fails because the application of the federal interest rate to all claims is rationally related to the legitimate interests in efficiency, fairness, predictability, and uniformity within the bankruptcy system. While the instant case might lend itself to easy application of an alternate interest rate, "a classification does not fail rational-basis review because it 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Heller v. Doe,* 509 U.S. 312, 321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quoting *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)).

**AFFIRMED.**