**In re Anthony F. BERENATO, Sr., Debtor.**

**Bankruptcy No. 97–35178DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

Oct. 29, 1998.

Anthony F. Berenato, Sr., Springfield, PA, Michael A. Cataldo, Philadelphia, PA, for Debtor.

Kathleen Kernaghan, District Counsel, IRS, Philadelphia, PA, Local Counsel for IRS.

Gregory S. Hrebiniak, Tax Division—CTS Eastern, Washington, DC, General Counsel for IRS.

Leslie E. Puida, Philadelphia, PA, for Nationsbanc Mortgage Corp.

Gary McCafferty, Philadelphia, for Mellon Mortgage Co.

Edward Sparkman, Philadelphia, PA, for Chapter 13 Trustee.

Frederic Baker, Ass't U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The principal parties to the instant series of contested matters, ANTHONY F. BERE-NATO, SR. ("the Debtor"), and the Internal Revenue Service ("the IRS"), would both apparently prefer that this court adjudicate the merits of the Debtor's objection ("the Objection") to the IRS' proof of claim, based upon 26 U.S.C. § 6672, in the amount of $461,-647.08. However, we deem it necessary to first consider and grant the motion of the IRS to prevent the Debtor from proceeding under Chapter 13 in this case under 11 U.S.C. § 109(e), because that determination renders inappropriate our resolution of the more difficult issue of whether the Objection should be upheld.

### B. PROCEDURAL AND FACTUAL HISTORY

The Debtor began the instant individual bankruptcy case on December 12, 1997, by filing a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The Debtor listed a general unsecured claim of the IRS in the amount of $338,000 as "DISPUTED PAYROLL TAX" on his Schedule "F." A proof of claim was filed by the IRS on April 24, 1998, which was later amended on May 13, 1998, in the amount $461,647.08 as an unsecured priority claim. The basis of the IRS' claim is that the Debtor was allegedly a "responsible party" within the meaning of 26 U.S.C. § 6672 of the Internal Revenue Code for taxes arising from the first quarter of 1990 through the second quarter of 1991 owed by Custom Art Metals, Inc. ("Custom") and that he is, therefore, liable for the nonpayment of Custom's trust fund taxes in the amount claimed.

The confirmation hearing in the Debtor's case was first scheduled on May 28, 1998. Prior to the continued hearing on confirmation on June 25, 1998, the Debtor filed the Objection to the IRS claim at issue on June 16, 1998, contending that he was not liable to the IRS as a "responsible party" on account of Custom's liability. The confirmation hearing was continued until July 25, 1998, the scheduled date of the hearing on the Objection.

On July 20, 1998, the IRS filed a motion to dismiss the debtor's Chapter 13 petition under 11 U.S.C. § 109(e) ("the IRSMTD"). On July 24, 1998, we entered an order scheduling, inter alia, a hearing on the Objection and the IRSMTD, on a must-be-heard basis, on September 22, 1998.

On the latter date, the hearing was in fact held. Thereafter, an order was entered directing the parties to simultaneously file briefs in support of their respective positions by October 6, 1998. The parties rendered their submissions in timely fashion. On or about October 15, 1998, the Debtor directed two *pro se* communications to us in the nature of rebuttal to the IRS' brief. We shared these inappropriate [1] communications with counsel.

---

1. These submissions by a debtor represented by counsel constituted impermissible "by-brid representation." *See In re Trinsey,* 115 B.R. 828, 832–34 (Bankr.E.D.Pa.1990) (a party may represent himself or be represented by counsel, but not both). They were also inappropriate *ex parte* communications to a judge who has a matter under advisement. See S. Stretten, *Ethics Fo-* *rum,* PA. L. WKLY. 1324, 1354 (Oct. 26, 1998) (writing to a judge about the merits of a case is improper, even if the opponent is copied). Finally, this court greatly disfavors submission of briefs additional or supplemental to those allowed by the Court. *See In re Jungkurth,* 74 B.R. 323, 325–26 (Bankr.E.D.Pa.1997), *aff'd sub nom.*

The only witness at the hearing was the Debtor. The IRS stated at the hearing that it was not pressing the IRSMTD and instead wished to litigate the Debtor's § 6672 liability. The IRS' brief addressed only the § 6672 liability issue.

However, this court made it quite clear at both the commencement and the end of the hearing of September 22, 1998, that we considered the § 109(e) issue raised by the IRSMTD to be predominant. The Debtor argues that *In re Mazzeo*, 131 F.3d 295 (2d Cir.1997), cited by the court at the hearing, is distinguishable because the *Mazzeo* debtor did not "administratively object" to the § 6672 deficiency assessed against him, while the Debtor did. Secondly, he contends that only an "allowed claim" should be considered as a "debt" for purposes of § 109(e). Finally, he argues that the IRS "never raised" the § 109(e) issue at the hearing.

Since the Debtor's liability under § 6672 is ultimately not determined by us, the facts developed at the hearing, which relate principally to that issue, are not really relevant. Nor are the Debtor's *pro se* improper attempts to embellish the record on that issue pertinent. We will therefore summarize the underlying facts very briefly.

In late 1989 the Debtor, who is a certified public accountant, became the majority owner of Custom by reason of a default in an agreement to purchase a controlling interest in that company between the Debtor and one Stanley Segal. Although the Debtor, in the course of 1990, became Chairman of the Board, president, secretary, and treasurer of Custom, he denied any involvement in its operations.

Custom filed bankruptcy in a case before this court in early 1991. Documents filed in that case identify the Debtor as a key employee of Custom seeking compensation for corporate duties. The debtor denied any knowledge of these filings or receipt of any compensation from Custom. He also testified that his only role in Custom was to seek financing for its operations and to occasional-ly sign checks or other documents, such as tax returns. However, he claimed that the document and check signing and his official positions merely cast him as a "figurehead" who had no knowledge of the internal operations of the business, including its payment of taxes or other liabilities.

Apparently as the ultimate result of an interview regarding his role with Custom by an IRS agent on October 16, 1992, which transpired when he coincidentally went to the IRS office to apply for a job as an agent himself, the IRS sent him a letter dated March 29, 1994, indicating an intention to assess a § 6672 penalty of $338,000 against him. The Debtor claimed that his efforts to appeal this determination, as instructed in this letter, have been thwarted by, *inter alia*, the loss of his file. The precise administrative status of the assessment process and the question of whether the Debtor has any potential continuing rights to appeal this liability outside of bankruptcy are not clear to us. The IRS apparently claims that interest and penalties have increased the amount of the claim to $461,647.08.

## C. DISCUSSION

■ Although both parties apparently disagree with the court on this point, we believe that, before addressing the questions of whether or not the Debtor is a responsible party under § 6672, we must first determine whether the Debtor is eligible to proceed with this case under Chapter 13 in this court. This determination requires us to ascertain whether the Debtor meets the requirements of 28 U.S.C. § 109(e), which provides, in pertinent part, that "only an individual...that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 [2]...may be a debtor under chapter 13 of this title." The claim of the IRS alone, as reflected on the Debtor's Schedules, places the Debtor well over the § 109(e) limit.

*Jungkurth v. Eastern Financial Services, Inc.*, 87 B.R. 333 (E.D.Pa.1988).

2. Effective as to cases filed on or after April 1, 1998, this figure has been adjusted to $269,250. However, this case was filed prior to April 1, 1998.

■ The starting point for determining § 109(e) debt-limit eligibility is, usually, looking at the Schedules filed. *See In re Pearson*, 773 F.2d 751, 755–56 (6th Cir.1985); *In Re Brooks*, 216 B.R. 838, 840–41 (Bankr. N.D.Okla.1998); *In re Redburn*, 193 B.R. 249, 255 (Bankr.W.D.Mich.1996); *In re Haveron–Quigley*, 1994 WL 502019, at *1 (Bankr. E.D.Pa. Sept. 12, 1994); and *In re Rigdon*, 94 B.R. 602, 604 (Bankr.W.D.Mo.1988). The Debtor's IRS debt is scheduled as an unsecured claim in the amount of $338,000. The IRS' proof of claim concurs that the indebtedness is unsecured, although the IRS does assert that the claim is even larger and that it is entitled to priority status. The claim is therefore clearly unsecured and in excess of $250,000. The only questions remaining under § 109(e) are whether the debt is "noncontingent" and "liquidated."

> A debt is contingent if it "is 'one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.' " *Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306 (9th Cir.1987) (quoting *Brockenbrough v. Commissioner*, 61 B.R. 685, 686 (W.D.Va.1986))....

*In re Maxfield*, 159 B.R. 587,. 589 (Bankr.D.Idaho 1993). *Accord, In re Gordon*, 127 B.R. 574, 578 (Bankr.E.D.Pa.1991), citing *In re Pennypacker*, 115 B.R. 504, 507 (Bankr.E.D.Pa.1990) (per TWARDOWSKI, CH.J.); and *In re Andrews*, 78 B.R. 420, 425 (Bankr.E.D.Pa.1987), and quoting *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir.1981).

■ Consistent with the foregoing, in the context of a § 6672 claim, the *Mazzeo* court holds that "a debt is ...noncontingent when all of the events giving rise to the liability for the debt occurred prior to the debtor's filing for bankruptcy." 131 F.3d at 303. The *Mazzeo* court therefore goes on to state that an actual assessment need not take place for a debt to be non-contingent. Rather, the court asserts, at *id.*, that,

> a taxpayer's duty to pay taxes derives from statute and arises upon his nonpayment of the taxes when due. The obligation to pay

is not contingent on any extrinsic event. Although the taxing body may be required to issue an assessment before it may enforce the tax liability through administrative, rather than judicial, procedures, the absence of such an assessment does not make the debtor's obligation contingent.

The *Mazzeo* court further holds that a debtor's § 6672 liability is triggered as soon as the corporation for which the debtor is alleged to be responsible fails to pay over the unemployment taxes collected from his employees. *Id.* Finally, the *Mazzeo* court notes that a debt will not be considered contingent because the debtor disputes the claim. *Id.* at 304. *Accord, e.g., Gordon, supra*, 127 B.R. at 578, citing numerous cases including *Pennypacker, supra*, 115 B.R. at 506–07. Therefore, we easily conclude that the debt at issue is noncontingent.

■ As to the issue of whether a disputed § 6672 claim is considered as "liquidated," *Mazzeo* holds that " '[t]he concept of liquidation for purposes of 109(e) relates only to the amount of liability, not the existence of liability.' " 131 F.3d at 304, quoting *United States v. Verdunn*, 89 F.3d 799, 802 n. 10 (11th Cir.1996). Thus, the *Mazzeo* court finds that a claim will be viewed as liquidated if " 'the value of the claim is easily ascertainable.' " *Id.*, quoting *In re Knight*, 55 F.3d 231, 235 (7th Cir.1995). Consequently, where the "process for determining the claim is fixed, certain, or otherwise determined by a specific standard," the claim will be considered liquidated. *In re Barcal*, 213 B.R. 1008, 1014 (8th Cir. BAP 1997).

In *Mazzeo*, the court determined that the debt was easily ascertainable by the statutory provisions and the tax returns filed. *Id.* at 305. *See also, Verdunn, supra*, 89 F.3d at 803 (relying on a *Knight, supra*, court finds that the amount of the debt was ascertainable through the application of fixed legal standards). Again, many courts have stated that the existence of a dispute alone is insufficient to render a claim unliquidated. *See* the cases cited in the foregoing paragraph. The Debtor's obligation to the IRS is fixed at a sum certain. We therefore conclude that the IRS' claim is liquidated.

The instant claim of the IRS is hence unsecured, noncontingent, and liquidated in an amount which exceeds $250,000. Consequently, the Debtor is ineligible to file a Chapter 13 bankruptcy case under § 109(e) of the Code. We do not accept the Debtor's claimed distinction from *Mazzeo* because the debtor there did not "administratively object" to the IRS' claim. The *Mazzeo* debtor had commenced a proceeding under 11 U.S.C. §§ 505(a)(1) and 523(a)(1)(A) disputing the merits of the IRS' § 6672 claim. 131 F.3d at 299–300. The instant record is unclear whether the Debtor is presently pursuing any process for disputing the IRS' claim other than litigating the Objection before us. Therefore, it is hard to see my distinction between the *Mazzeo* facts and the instant case on the question of whether the debtor disputes the IRS § 6672 claim at issue.

The Debtor is simply incorrect in his assertion that only an "allowed claim" can be considered as a "debt" for purposes of § 109(e). It is only a claim which is frivolous or could be proven to be contingent or unliquidated should not be counted for § 109(e) purposes.

We concede that there can, in some cases, be a considerable degree of subtlety in determining whether a debt should be counted for purposes of § 109(e). In certain circumstances, it may even be necessary to decide the validity of a claim prior to making a § 109(e) determination. *See Gordon, supra*, 127 B.R. at 578 n. 2. However, to the extent that *Gordon* implies that this procedure is the norm, we recede from same. In the instant factual setting, when the Schedules acknowledge an unsecured claim in excess of $250,000 and the claim of the IRS is certainly not frivolous, this issue is not particularly close.

We acknowledge that the reluctance of the IRS to press the § 109(e) issue is troubling. Apparently, the IRS believes that it has a strong case on the merits and it wishes to resolve this issue here and now. With respect to the merits, we note that the Debtor apparently has the burden of proving that he is not a "responsible party" and that his actions were not "willful." *See Resyn Corp. v. United States*, 851 F.2d 660, 662–63 (3d Cir.1988); and *In re Green*, 89 B.R. 466, 474 (Bankr.E.D.Pa.1988). *Compare In re Compass Marine Corp.*, 146 B.R. 138, 144–47 (Bankr.E.D.Pa.1992). It is doubtful that the Debtor proved that he is not a "responsible party" *See Green, supra*, 89 B.R. at 474–77. His evidence regarding "willfulness" was not very focused. *But see In re Macagnone*, 224 B.R. 212, 217 (Bankr.M.D.Fla.1998) ("responsible party" making claims similar to the Debtor avoided § 6672 liability on the ground that his actions were not proven "willful").

However, in the last analysis, it is this court which must determine Chapter 13 eligibility. Further, we believe that we are obliged to do so as a threshold issue, in order to preserve the use of our resources to cases involving debtors eligible to file under that Chapter. We should not decide issues which, like the Objection, are presented in the context of cases not properly before us. If necessary, we believe that it is quite appropriate for us to raise § 109(e) issues *sua sponte*, at the earliest possible stage in a Chapter 13 case. *See In re Bourque*, 153 B.R. 87, 95 (Bankr.D.Mass.1993). Here, the IRSMTD is before us, and we deem it quite appropriate to accord it initial prominence irrespective of the IRS' apparent desire to relegate it to a secondary role.

We clearly advised the parties that we would consider the § 109(e) issue at this stage. The result of our further contemplation on this issue has resulted in our conclusion that we must give any colorable § 109(e) issue initial prominence, whether this is urged by a party or not. If the same scenario as is presently before us arises again, we intend to conduct only such a hearing as will resolve the § 109(e) issue and refrain from hearing the objection to the claim.

A response to the argument that it might be more economical in the long run to decide the Objection first appears in *United States v. Dallas*, 157 B.R. 912 (S.D.Ala.1993). In that case the bankruptcy court, hearing an objection to an IRS § 6672 claim, sustained the objection and confirmed the debtor's plan. Without deciding whether the bankruptcy court was correct on the merits of the objection to the IRS' § 6672 claim, the dis-

trict court reversed the bankruptcy court's decision on the ground that the IRS' claim in excess of $250,000 barred the debtor from continuing in Chapter 13. *Id.* at 913.

Thus, in the instant case, sustaining the Objection would not necessarily make the IRS' claim go away. Certainly, an appeal by the IRS, whether similar to that in *Dallas* or simply on the merits of the § 6672 issue, would keep the presence of the IRS' § 6672 claim alive. We believe that the presence of this claim would continue even were we to decide the matters before us in favor of the Debtor and there were no appeal taken. Other courts, in addition to those in *Mazzeo, Verdunn, Dallas, Barcal, Brooks, Redburn,* and *Bourque,* cited previously in this Opinion for various other principles, implicitly agree. *See also, e.g., In re Madison,* 168 B.R. 986 (D.Hawai'i 1994); *In re Lamar,* 111 B.R. 327 (D.Nev.1990); *In re Knize,* 210 B.R. 773 (Bankr.N.D.Ill.1997); and *In re Sivertsen,* 180 B.R. 513 (Bankr.N.D.Ill.1994).

We therefore shall resolve the matters before us by simply deciding that the Debtor is ineligible to continue in Chapter 13. We will, however, accord the Debtor a brief opportunity to determine whether he wishes to convert this case to another Chapter for which he would be eligible, as we did in *Haveron–Quigley, supra,* at *2, and we will refrain from dismissing his case until the time to convert posses. Also, we will retain jurisdiction of the Objection in the event that its resolution would be appropriate in the context of the converted case.

## D. CONCLUSION

An order consistent with this Opinion will be entered.