**In re Charles J. WEISS, Debtor.**

**No. 99–32874DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 9, 2000.

---

454

Paul B. Maschmeyer, Ciardi, Maschmeyer & Karalis, PC, Philadelphia, PA, for Debtor.

Christopher R. Zaetta, U.S. Department of Justice, Washington, DC, Thomas M. Rath, Mellon Independence Center, Philadelphia, PA, for IRS.

Edward Sparkman, Philadelphia, PA, Chapter 13 Trustee.

Frederic Baker, Ass't U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

Before this court for decision are a number of objections ("the Objections") to confirmation of the Amended Chapter 13 Plan ("the Plan") of CHARLES J. WEISS ("the Debtor") lodged by the Internal Revenue Service ("the IRS"). We ultimately conclude that the Plan cannot be confirmed because (1) the Debtor's bankruptcy estate is solvent and the Debtor's plan does not propose to pay the IRS the full amount of its claim, including what we conclude is requisite post-petition interest, despite our finding that the Debtor has sufficient disposable income to do so; and (2) the Plan unfairly discriminates against the IRS's claim by delaying payments to it during the pendency of appeals in a prior matter before the court, reported as *In re Weiss*, 237 B.R. 600 (Bankr.E.D.Pa.1999) ("*Weiss I*"), while payments to other payees under the Plan are not delayed. However, since we find that the full amount of the IRS's claim, pursuant to *Weiss I*, though not calculable on this record, is unlikely to bring the Debtor's total debts over the debt limit, we conclude that the Debtor could, in light of *Weiss I*, compose a further amended plan consistent with the Bankruptcy Code.

However, since the District Court has recently determined that the *Weiss I* appeals may proceed before it (and possibly before other appellate courts), the confirmation process appears to be stayed pending the conclusion of this process. We will schedule a status hearing on August 23, 2000, to ascertain whether any further ac-

tion by this court at this juncture is appropriate.

### B. PROCEDURAL AND FACTUAL HISTORY

As *Weiss I* relates, 237 B.R. at 602–03, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 15, 1997 ("the Chapter 7 Case"), receiving a discharge on April 16, 1998, prior to that Case's closure on April 23, 1998. On January 11, 1999, the IRS filed a motion to reopen the Chapter 7 Case in order to pursue its contention that the Debtor's federal income tax liabilities for tax year 1986 through tax year 1991 were not discharged in that Case.

After the IRS's motion to reopen the case was granted without opposition on March 23, 1999, the IRS filed the proceeding at issue in *Weiss I* on April 12, 1999. Following a trial on June 30, 1999, we issued *Weiss I* on August 17, 1999, holding that the Debtor's liabilities for tax years 1988 through 1991 were nondischargeable, but that his liabilities for tax years 1986 and 1987 were dischargeable. *Id.* at 604–07. However, we did not perceive any basis for liquidating the Debtor's nondischargeable tax liability and therefore did not do so. *Id.* at 602.

The IRS filed an appeal in the District Court on August 16, 1999, from the *Weiss I* determination of dischargeability of the 1986 and 1987 tax year liabilities. The Debtor cross-appealed, contending that his liabilities for tax years 1988 through 1991 should also have been discharged.

On October 8, 1999, the Debtor filed the instant new bankruptcy case under Chapter 13 of the Bankruptcy Code. The Debtor's initial Chapter 13 Plan ("the First Plan") was filed on November 9, 1999, prior to the completion of the first meeting of creditors on November 23, 1999. Although, pursuant to Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 4003(b), creditors have only thirty days after the meeting of creditors is completed to object to any claims of exemptions by a debtor, the IRS never filed objections to any of the exemptions declared on his Schedule "C" by the Debtor. The exemptions claimed, pursuant to Pennsylvania state law, included a home with equity fixed at $280,000, as well as a retirement plan valued at $375,000, but were allegedly owned by the Debtor by the entireties with his second wife and hence exempt from execution to satisfy the Debtor's individual tax liabilities under applicable state law.

The Debtor's filing of this case effected an automatic stay of the appeals of *Weiss I*. On January 31, 2000, the IRS filed a motion to lift the automatic stay to allow these appeals to proceed. We issued an Order/Memorandum, reported at *In re Weiss*, 2000 WL 226705 (Bkrtcy.E.D.Pa. 2000) ("*Weiss II*"), denying that motion on February 25, 2000. The IRS filed another appeal in the District Court from this decision, which the District Court resolved in a Memorandum and Order of July 31, 2000, in C.A. No. 00–1672, reversing *Weiss II* and allowing the *Weiss I* appeals before it to go forward.

The IRS initially filed a proof of claim in this case the amount of $443,975.64, including liabilities for all tax years from 1986 through 1991 with penalties, on January 20, 2000. It then filed an Amended Proof of Claim ("the Claim") on February 3, 2000. The Claim included priority claims of $618.05 for interest arising from tax years 1995, 1996, and 1998, and a general unsecured claim of $301,706.62, including all tax liability from 1986 through 1991, omitting only the penalties on same, which it had stipulated would be discharged in the Chapter 7 Case.

The First Plan proposed to make monthly payments of $247.30 except in March, when the Debtor would make a lump sum payment each year of $34,613.25 for the five-year life of this Plan. The First Plan further stated in pertinent part that it provided for "payment in full of all alleged claims of the IRS. Such payment

shall be contingent upon the outcome of the [*Weiss I*]...."

The IRS objected to the First Plan on numerous grounds. First, it argued that this Plan could not be confirmed because it did not provide for payment of the IRS's claim in full with post-confirmation interest, allegedly in violation of 11 U.S.C. § 1325(a)(4). Second, it claimed that the Debtor failed to satisfy the disposable income requirement set forth in 11 U.S.C. § 1325(b)(1)(B). Further, the IRS contended that, in light of its claim for $301,706.62 plus post-confirmation interest, the Debtor's noncontingent, liquidated unsecured debts exceeded the debt limit of $269,250 set forth in 11 U.S.C. § 109(e) of the Code.

On February 24, 2000, prior to the first scheduled confirmation hearing on April 13, 2000, the Debtor filed objections to the Claim, a hearing on which was continued to April 13, 2000. The parties ultimately agreed to continue all matters listed on April 13, 2000, until May 11, 2000.

The Debtor filed the Plan presently before us for confirmation on April 20, 2000. Like the First Plan, the Plan called for monthly payments of $247.30 for each month except March. The Debtor again proposed to pay $34,613.25 in March of the first year, but now agreed to pay $41,213.77 in March of the following years over the five-year life of the Plan. The Debtor also modified the First Plan by proposing, in the Plan, for

payment in full of all alleged claims of the IRS. Such payment shall be contingent upon the outcome of the litigation...and any other appeals dealing with this matter or the bankruptcy itself. The funds will be kept in an interest bearing account until the conclusion of any appeals regarding this matter.

Meanwhile, the plan called for "[p]ayment in full of all [other] unsecured creditors."

The IRS filed the Objections to confirmation of the Plan before us on April 25, 2000. One objection, purely procedural, raised the issue that, since the Plan was not served upon the IRS until April 21, 2000, a confirmation hearing scheduled for May 11, 2000, would not comport with the twenty-five (25)-day prior notice requirement of F.R.B.P.2002(b)(2) and Local Bankruptcy Rule 3015–2(a)(3)(ii). In response to this objection, the parties agreed to again postpone all of the hearings until May 18, 2000.

The Objections reiterated most of the IRS's objections to confirmation of the Debtor's First Plan. First, the IRS maintained that the Plan could not be confirmed because it did not provide for full payment to the IRS on its priority claim and general unsecured claim with post-petition interest as required by 11 U.S.C. §§ 1322(a)(2) and 1325(a)(4). Perhaps most significant to our ultimate resolution here, although appearing near the end of the IRS's list of objections, is a new version of the argument that the Plan does not propose to pay all of the Debtor's disposable income, and therefore fails to meet the requirement of 11 U.S.C. § 1325(b)(1)(B).

The IRS included many other issues in the Objections. It argued that the Plan could not be confirmed because it unfairly discriminated among the classes of unsecured general claims, in contravention of 11 U.S.C. § 1322(a)(3), because it withheld any payments to the IRS until the completion of the *Weiss I* appeals process, while paying other unsecured creditors immediately. The IRS also alleged that the Debtor had not established cause for extending the term of the Plan to five years, in contravention of § 1322(d). Next, in the same light, the IRS contended that the Plan might improperly continue beyond the five-year deadline of § 1322(d) until the appeals process referenced therein had been completed. Further, the IRS contended that the Plan was not feasible, in violation of 11 U.S.C. § 1325(a)(6), and was not proposed in good faith, in violation of 11 U.S.C. § 1325(a)(3). And, finally, the IRS reasserted its objection that the Plan cannot be confirmed because the Debtor

failed to meet the unsecured debt limit of $269,250, and hence he was ineligible to be a Chapter 13 debtor under § 109(e).

On April 28, 2000, the IRS served a subpoena duces tecum on the Debtor, requesting him to bring certain personal documents to the (then) May 11, 2000, hearing. In response the Debtor filed a motion for a protective order on May 9, 2000, which was denied on May 10, 2000. When the confirmation hearing was continued until May 18, 2000, the Debtor agreed to produce the requested documents at that time.

The confirmation hearing was held on May 18, 2000. The parties stipulated to the accuracy of the components of the Claim referenced at pages 457–58 *supra*, making it unnecessary to resolve the objections to the Claim. The only witness at the hearing was the Debtor. Throughout his testimony, the Debtor, who it will be recalled is an attorney, reiterated that the purpose of the Plan was to pay his tax liability in full, although he apparently referred to only the nondischargeable portion of this tax liability. While recognizing that he would probably have to pay the full amount of the nondischargeable liability due to his substantial disposable income, the Debtor nevertheless claimed it would be "impossible" for him to pay this claim in less than five years.

At this point, we note that the Debtor's Schedule "I" (monthly income) contains a footnote that the income reported there "does not include annual distribution from [his law] partnership which is reflected on Statement of Financial Affairs and will be paid through the Plan." We further note that we could not locate anywhere on the Statement of Financial Affairs which accounted for the Debtor's annual partnership distribution, a sum which significantly increased the Debtor's net income each year.

At the hearing, the Debtor explained that the source of the large annual March payments were and would be his annual law partnership distributions. He also maintained that his income fluctuated depending on how his cases proceed during the year, and that the law partnership's distribution fluctuated depending on how the firm partnership performed in that year. The IRS questioned the Debtor at some length regarding some of his expenses listed on Schedule "J." Specifically, the IRS attempted to show that the following were not "reasonably necessary expenses:" (1) $760 for private schools for his eight-year-old, five-year-old, and three-year-old sons; (2) $100 for car phones, half of which was estimated as attributable to his unemployed wife; and (3) $220 for "child care, pet care, cable, house cleaning."

After the hearing of May 18, 2000, we ordered the parties to simultaneously submit opening briefs by June 19, 2000, and reply briefs by July 7, 2000. On June 8, 2000, the IRS filed a motion to compel the Debtor to comply with the pre-trial subpoena insofar as it requested the Debtor to produce his monthly 1999 bank statements, to re-open the record, and to extend the briefing dates. Finding after a hearing that this motion was untimely and that the IRS was unable to show that these subpoenaed documents were significant to the cause before us, we denied this motion on June 15, 2000.

In his opening brief, the Debtor argued, without reference to the actual Objections raised by this IRS, that the Plan meets all of the requirements necessary for confirmation. In particular, he argued that the Plan proposed to pay the IRS more than it would have received in a Chapter 7 liquidation because all of his assets were exempt.

The arguments made by the IRS in its opening brief are generally, but not entirely, consistent with the Objections filed. The IRS first asserted that the Plan could not be confirmed because it failed to provide for full payment of its claim, including post-petition interest. However, the IRS failed to provide any means for computing

the amount of post-petition interest which was allegedly due to it, nor did it quantify same.

The IRS further argued that the Plan unfairly discriminated against it because all other unsecured creditors were classified separately and paid continuously during the Plan, whereas the IRS's payments were delayed for and were contingent upon the outcome of the *Weiss I* appeals, allegedly in violation of 11 U.S.C. § 1322(a)(3). This aspect of the Plan also triggered the IRS's contention that the Debtor did not submit his Chapter 13 plan in good faith.

The IRS also focused on the principle that a plan which did not propose to pay all unsecured creditors in full may be confirmed only if all of the Debtor's disposable income were applied to plan payments. The IRS further asserted that the Plan could not be confirmed because the Debtor neither proposed to pay its claim in full, including post-petition interest, nor applied all of his disposable income to the Plan.

Finally, the IRS reiterated its argument that the Debtor's noncontingent, liquidated debts, which it argued must include its entire 1986 through 1991 claims of more than $300,000 for this purpose, citing *In re Berenato*, 226 B.R. 819, 822–23 (Bankr. E.D.Pa.1998), exceeded the debt limit of § 109(e).

In his reply brief, the Debtor began by arguing that he had met all of the requirements of 11 U.S.C. § 1325(a) and that, as a result, confirmation of a plan was mandatory. He then stated that the IRS could not object to his disposable income applied to the plan because the IRS was being paid in full. Finally, he argued that he should be given the five-year maximum to make payments under the Plan in order to avoid a drastic alteration of his prepetition consumption levels.

Although the Debtor claimed that it was unnecessary to examine his disposable income because all of his creditors were receiving payment of their claims in full

under the Plan, the Debtor's reply brief nevertheless includes an extended analysis attempting to persuade us that he was paying so much into the Plan that his payments exceeded his disposable monthly income. According to the Debtor's calculations, in years two through five of the Plan, his excess disposable monthly income was a negative $518.

However, we find the Debtor's calculations to be dubious at best, and more likely an attempt to distort his annual income. For instance, the Debtor calculated an average base net income figure of $157,052 based on his earnings from 1996 through 1998. Significantly, the Debtor refused to include, in this income "average," his 1999 earnings totaling $266,832 because he claimed that this was an "extraordinary" year which was an "anomaly." However, we find that the Debtor offered no explanation whatsoever to support his assertion that 1999 was an anomalous year. For instance, we may have accepted the Debtor's income calculation as reasonable if he had offered evidence indicating that, in 1999, he had received a large contingency fee for a case he had been working on over a number of years. However, there was no such assertion. To the contrary, since 1999 is the most recent year and would seem to be the best indication of his income for the plan period from 2000 through 2004, we find that it must be considered of significant weight. Moreover, we note that the Debtor's disposable income analysis in his brief includes a monthly deduction of $1,745 for payroll taxes, while the monthly expenses figure in Schedule "J" already included a payroll taxes deduction of $3,100. Based on the above inaccuracies, we find the Debtor's calculation of his disposable income to be inaccurate, and we are obliged to recalculate same. Not surprisingly, we reach a different result. See page 462 *infra*.

Basically, the IRS' reply brief reiterated the same objections that have been referenced previously. It did raise one new issue: that the Plan does not comport with

11 U.S.C. § 1325(a)(5) because the Debtor proposed to pay his mortgage outside the Plan but did not provide "for retention of the mortgagee's lien or surrender of the property to the mortgagee in accordance with § 1325." However, we find that, since the IRS never raised this issue or any similar issue in the Objections themselves or its prior brief, and appears to lack standing to do so, any such objection cannot be considered.

## C. DISCUSSION

1. *The Plan Does Not Satisfy the Disposable Income Requirements of 11 U.S.C. § 1325(b)(1)(B), in Light of Its Failure to Account for Post-petition Interest Despite the Debtor's Solvency.*

■ The Bankruptcy Code confirmation requirements pertinent to the matters before us, 11 U.S.C. § 1325(a), (b)(1)(B), read as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if:

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; ... and

(6) the debtor will be able to make all payments under the plan and to comply with the Plan.

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan:

. . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date the first payment is due under the plan will be applied to make payments under the plan. . . .

The Plan proposes to pay the IRS, the only unsecured creditor referenced therein by name, $193,466.17, the tax liability for tax years 1988 through 1991, including pre-petition interest on these arrearages, and the modest $618.05 priority claim. Because the tax liability for tax years 1986 and 1987 was found to be dischargeable by this Court in *Weiss I*, the amount of the general unsecured debt portion of the Claim shrank from $301,706.62 to $192,-848.12, including principal and interest. Although the Debtor purported to pay his entire nondischargeable debt to the IRS, the Plan did not provide for payment of any post-petition interest to the IRS.

As noted at page 460, the IRS raised the Debtor's failure to include payment of the unquantified post-petition interest in the Plan in its Objections. The amount of this interest appears to be in the range of $10,000 to $15,000 in the first year of the Plan (assuming it to be about six (6%) of $200,000 which is $12,000), depending on the applicable interest rates, and would be reduced thereafter depending on the rate at which the balance would decline. Moreover, upon close examination of the Debtor's tax returns from 1996 through 1999, we find that the Debtor has a considerable amount of excess disposable income which is not being paid into the Plan.

We herein determine that the Debtor's average net annual income over the period from 1996 through 1999 is $184,497.00. The Debtor's income in 1999 alone was $266,832.00, according to the most recent tax return filed by the Debtor. Although the Court could simply use the 1999 figure of $266,832.00 as a measure of projected income for the plan period, the Court

found it somewhat persuasive that the Debtor's income could have been higher in 1999 than it would be in future years. Therefore, the Debtor has been given the benefit of some doubt by our utilization of an average net annual income figure of $184,497.00. It is next necessary to determine whether all of the Debtor's claimed annual expenses of $98,400.00 ($8,200 per month × 12), as listed in the Debtor's Schedule "J," are "reasonably necessary" in order to arrive at the Debtor's actual disposable income, and then to subtract the "reasonably necessary" expenses from his income to ascertain his disposable income.

■ The Bankruptcy Code, at 11 U.S.C. § 1325(b)(1)(B), mandates that "all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." In *In re Mac-Donald*, 222 B.R. 69, 74 (Bankr.E.D.Pa. 1998), we held that the burden of proving compliance with this provision lies with the debtor, who has superior access to information about his own income and expenses and who is attempting to obtain relief through the Bankruptcy Code. *See also In re Rothman*, 206 B.R. 99, 104 (Bankr. E.D.Pa.1997); *In re Fricker*, 116 B.R. 431, 437 (Bankr.E.D.Pa.1990); and *In re Fries*, 68 B.R. 676, 683–85 (Bankr.E.D.Pa.1986).

■ Pursuant to the language of § 1325(b)(2)(A), "disposable income is defined as income received by the debtor that is not reasonably necessary for the support of debtor or his dependents." *In re Carter*, 205 B.R. 733, 735 (Bankr. E.D.Pa.1996). *See also In re Rothman*, 204 B.R. 143, 156–57 (Bankr.E.D.Pa.1996), *reconsideration denied for the most part*, 1997 WL 9994 (Bankr.E.D.Pa. Jan. 7, 1997). Income that must be allocated for plan payments includes expenses for "unnecessary" goods and/or services. "[T]he primary intent of the definition of disposable income is to prevent large expenditures by chapter 13 debtors on luxury goods and

services which cause holders of unsecured claims to receive reduced payments." 8 COLLIER ON BANKRUPTCY, § 1325.08[4][b][ii], at 1325–54 (15th ed. rev. 1999).

■ In the instant case, we easily conclude that the Debtor has failed to meet his burden of providing that private school tuitions for his three children are a necessary expense rather. than a luxury item. In some circumstances, sending one's child to a private school is not an unreasonable expense, and it does not necessarily have to be sacrificed in order to pay more money to unsecured creditors through the Chapter 13 plan. *See In re Navarro*, 83 B.R. 348, 350–51, 356–57 (Bankr.E.D.Pa. 1988) (debtors paid $100 monthly to send their son to a school providing religious education which they testified was very important to them). In many circumstances, however, private school tuition is a luxury expense that amounts to a debtor requiring his or her creditors to donate toward his children's education. *See In re Attanasio*, 218 B.R. 180, 231 (Bankr. N.D.Ala.1998), citing *In re Goodson*, 130 B.R. 897 (Bankr.N.D.Okla.1991). *See also MacDonald, supra*, 222 B.R. at 76–77 (sending child from a suburban environment to a school in New York City for religious education is not reasonable).

The Debtor offered no persuasive testimony that would justify spending $760.00 per month to send his children to private schools. The Debtor's five-year-old son and eight-year old son would clearly appear capable of attending public school in the safe, suburban setting of the Debtor's home as an alternative to private schooling. The couple's three-year-old son is enrolled in a pre-nursery program.

■ Examining Schedule "J" in light of the IRS's specific objections to the claimed expenses, we agree that items totaling $980 monthly expenses are not reasonable. These include the private school costs of $760.00 monthly, the cellular phone expense of the Debtor's wife esti-

mated at $50 monthly, and all but $50 (for cable) of the $220 monthly "child care, pet care, cable, house cleaning" expense. According to the Debtor's testimony, his wife is unemployed. There is, therefore, no critical need for her to have her own cellular phone, or for her not to perform, with the Debtor's assistance, child care, pet care, and house cleaning, along with care of the youngest child and the other children when they are not in school.

We therefore determine that the Debtor's annual allowable necessary expenses are $8200 less $980, or $7220 monthly, still a princely sum for most Chapter 13 debtors. Allowable annual expenses are therefore $7220 × 12 or $86,640. Therefore, the Debtor's total annual disposable income is calculated to be $184,497 less $86,640, or $97,837. Over a three-year period, the Debtor's disposable income computes to $293,511.

■ At this point, we emphasize that the upward limit of what the Debtor must pay in a confirmable Chapter 13 plan is the *lower* of (1) his disposable income; or (2) all claims against the Debtor which are payable under the Plan. That is because any surplus arising from the Debtor's solvency or ability to pay more than his debts would simply be returned to him and therefore need not be paid out in the first place. This truism is not recited in any known cases, probably because it is unusual to be confronted—as we are here—with a Chapter 13 debtor whose disposable income exceeds his total debts.

We now return to consideration of the Debtor's total debts. The only unsecured debt listed on his Schedules is that owed to the IRS. The only other such claims filed were by First Union National Bank, to which the Debtor successfully objected, and by the Commonwealth of Pennsylvania Department of Public Revenue ("the PA-DOR"), the priority and unsecured components of which total $161.90.

The only other claims of record of any kind are the secured portion of the PA-

DOR's claim of $1710.24 and the Debtor's two secured home mortgagees, which are scheduled at a total of $120,000 and have filed claims totaling about $105,600. The Debtor has legitimately provided to pay secured debts directly, "outside" of the Plan, by the terms of the Plan. *See In re Evans,* 66 B.R. 506, 509–10 (Bankr.E.D.Pa. 1986), *aff'd,* 77 B.R. 457 (E.D.Pa.1987). Therefore, the only debt which need concern us in the § 1325(b)(1)(B) analysis is that owed to the IRS, which, as to the nondischargeable tax liability for the 1988 through 1991 tax years, is agreed to be $193,466.17 without addition of any post-petition interest.

■ Generally, interest on a claim ceases to accrue when a bankruptcy petition is filed. *See In re Beguelin,* 220 B.R. 94, 98 (9th Cir. BAP 1998). *See also Nicholas v. United States,* 384 U.S. 678, 685, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966). However, post-petition interest may be awarded to a creditor when a debtor's estate is solvent. *See In re Walsh Construction, Inc.,* 669 F.2d 1325, 1330 (9th Cir.1982), quoting *United States v. Bass,* 271 F.2d 129, 130 (9th Cir.1959); *Beguelin, supra,* 220 B.R. at 98–99; and *In re Shaffer Furniture Co.,* 68 B.R. 827, 829–31 (Bankr. E.D.Pa.1987). The issue in *Beguelin* was whether, when a Chapter 13 debtor's estate is deemed solvent by operation of 11 U.S.C. § 1325(a)(4), post-petition interest accrues from the date when the bankruptcy petition is filed or from the date when a Chapter 13 plan is confirmed. The court concluded that post-petition interest "clearly accrues from the date of the petition through and beyond the effective date of the plan." 220 B.R. at 99. In arriving at this conclusion the *Beguelin* court noted that, under Chapter 13's "best interest of creditors" test, set forth in § 1325(a)(4), the value of property distributed to unsecured creditors, as of the effective date of the plan, cannot be less than the amount that would be paid toward the claim if the estate were liquidated on the date of confirmation. 220 B.R. at 99. Also, the court

notes that 11 U.S.C. § 726(a)(5) provides that, in the case of a Chapter 7 liquidation, an unsecured creditor is entitled to payment of interest at the legal rate from the date of the filing of the petition prior to any distribution to the debtor. *Id.* at 99–101.

Our above calculations reveal that the instant Debtor is clearly solvent and that, assuming his income for 2000 through 2004 merely rises to the average of his income from 1996 through 1999, we find that he is capable of paying more than double the amount of $43,934.07 annually called for by the Plan. Thus, once interest owed to the IRS on its allowed claim is determined, the Debtor may propose a plan which will pay the claim in full including such post-petition interest, or he may construct a plan that proposes to devote all of his disposable income the IRS's claim for a shorter period.

We emphasize that we do not have a sufficient record to ascertain the amount of the IRS's claim, including collectable post-petition interest, because we do not know the applicable interest rates, presumably established by statute at 26 U.S.C. § 6621, and the length of the Debtor's ultimate plan. However, as interest for the first year appears to fall between $10,000 and $15,000, see page 461–62 *supra*, and will decline thereafter as the principal is paid, the total additional interest payable will probably be in the $25,000 to $35,000 range. The total claim of the IRS will therefor lie in the range of $215,000 to $235,000, less than the Debtor's three-month disposable income of $293,511.

From this, we conclude that the Debtor's payments under the Plan are insufficient to satisfy the requirement of § 1325(b)(1)(B) and dictate that confirmation of the Plan must be denied. However, after briefly pointing out one other confirmation deficiency, we will address several of the IRS's remaining objections which appear to lack merit.

2. *The Plan Appears to Discriminate Against the IRS in Violation of 11 U.S.C. §§ 1322(a)(3) and (b)(1) Because Payments on the IRS's Claim Are Contingent on the Outcome of the Appeals in* Weiss I, *While All Other Unsecured Creditors Are Paid Immediately and Continuously Over the Life of the Plan.*

The Bankruptcy Code, at 11 U.S.C. § 1322(a)(3), requires that all claims classified in a particular class must receive the same treatment, and, at 11 U.S.C. § 1322(b)(1), that, in designating classes, a plan "may not discriminate unfairly against any class so designated" unless the debtor is liable with another individual on that claim. Thus, a plan may not treat substantially similar claims differently by classifying them separately. Discrimination may result under a plan from the order of distribution, particularly when payments on the claims in one class are deferred to the payments of claims in another class. *See* 8 COLLIER, *supra*, ¶ 1322.05, at 1322–13. *Cf. In re Dykes*, 10 F.3d 184, 186–87 (3d Cir.1993) (appeal from bankruptcy court order refusing to allow a priority creditor to be paid ahead of a secured creditor dismissed for lack of standing).

We addressed these Code provisions at some length in *In re Furlow*, 70 B.R. 973 (Bankr.E.D.Pa.1987), and, after considering numerous other authorities, developed the following test, *id.* at 978:

different treatment is permissible if and only if the debtor is able to prove a reasonable basis for the degree of discrimination contemplated by the Plan.

In that case we denied confirmation of a plan which treated an unsecured school loan debt better then all other unsecured debts for no apparent reason. *Id. See also, e.g., In re Groves*, 39 F.3d 212 (8th Cir.1994) (also rejecting a priority for non-dischargeable school loans); and *In re Green*, 70 B.R. 164 (Bankr.W.D.Ark.1986) (debtor could not pay a creditor secured by property of the debtor's mother directly in full, while relegating other unsecured

creditors to partial payments through the plan).

In the instant Plan, the Debtor has not only classified the IRS separately from any other of his general unsecured creditors, but also he has treated the IRS differently by providing that payments on its claim are contingent on the outcome of the appeals in *Weiss I* and are to be retained in an escrow account pending these appeals, while all other claims are to be paid unconditionally over the life of the Plan.

The Debtor obviously believes that the pendency of his *Weiss I* cross-appeal challenging the dischargeability of the 1988 through 1991 tax year claims constitutes a "reasonable basis" for this discrimination. We hold that it does not, pending of course the District Court's disposition of the *Weiss I* decision on that point in the appeal now proceeding before it. We made a final determination as to the Debtor's liabilities to the IRS in *Weiss I*. Unless our order on that issue is reversed, *Weiss I* constitutes a complete resolution of the issues presented therein to which we conclude at this point that the Debtor must adhere in formulating a plan. We could just as well conclude that the presence of the IRS's appeal should require the Debtor to put up a reserve on the contingency of *its* success, or some other device protective of the IRS's position, as to allow the Debtor to treat the IRS's claim worse just because *Weiss I* appeal is pending. In the scheme of things, it would be inappropriate to allow a party, either debtor or creditor, to frustrate the consummation of a plan, possibly affecting the distribution to other creditors, merely by the act of filing an appeal.

The only reason that we state our conclusion as to this issue in precatory terms, *i.e.*, the Plan *appears* to discriminate against the IRS, is that we are uncertain whether any other unsecured creditors actually exist. The only other known unsecured claims are those of the PADOR, in the grand total of $161.90. If no other unsecured creditors existed, there would be no discrimination at issue, merely the issue of whether treating any and all creditors by rendering their distributions contingent on future occurrences such as appeals is violative of the Code. It may be that such a provision would violate 11 U.S.C. §§ 1325(a)(4) or (a)(3) or § 1326(b). However, since, on its face, the Plan creates separate classes and treats them differently, our analysis under §§ 1322(a)(3) and (b)(1) appears appropriate. For this reason, confirmation must be denied. The Plan must provide that the IRS's allowed claims be unconditionally paid forthwith.

### 3. *None of the IRS's Other Attacks on the Plan Will Be Sustained.*

In addition to the foregoing meritorious objections to the Plan, the IRS asserted several other objections which we find are lacking in merit, and in most cases worthy of only summary treatment. The most persistent of these is the IRS's argument that the Debtor is ineligible to file a Chapter 13 case and therefore to propose any plan whatsoever, because its claims, embracing tax years 1986 through 1991, amount to over $300,000 and exceed the limit of noncontingent, liquidated, unsecured debts of $269,250 on the petition date, in violation of § 109(e).

A debt is noncontingent when "all events given rise to the liability for the debt occurred prior to the debtor's filing for bankruptcy." *In re Mazzeo*, 131 F.3d 295, 303 (2d Cir.1997). Conversely, a debt is contingent where the debtor "will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor." *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir.1987). *See also Berenato, supra*, 226 B.R. at 822.

However, this court itself determined, in *Weiss I*, that the Debtor's liabilities for tax years 1986 and 1987, totaling $108,240.45, were eliminated by the Chapter 7 Case discharge. There is, of course, a contingency that the IRS will prevail in the appeal of *Weiss I*, which will now go

forward, and establish a nondischargeable debt to it in excess of $269,250, just as there is a contingency that the Debtor will prevail on his cross-appeal and eliminate any nondischargeable obligation to the IRS. As we indicated at pages 464–65 *supra*, the interested parties are obliged to accept this court's claims adjudications in formulating Chapter 13 plans. Put another way, a District Court reversal would be an "extrinsic event" which would trigger the Debtor's liability for additional tax debt. Hence, the debtor's potential non-dischargeable obligation for the 1986 and 1987 tax year delinquencies is contingent, and cannot be considered.

Although a failure to satisfy the "noncontingent" requirement is sufficient to overcome the IRS's claim as to the inclusion of the 1986 and 1987 tax year obligations as countable under § 109(e), we note that unsecured debt must also be "liquidated" to be added to the debts eligible for consideration under § 109(e). A claim is liquidated if "the value of the claim is easily ascertainable." *Mazzeo, supra*, 131 F.3d at 304, quoting *In re Knight*, 55 F.3d 231, 235 (7th Cir.1995). In *Berenato, supra*, we found that a debtor's tax liability to the IRS was liquidated because, although we had not decided its validity it was derived from a specific, pre-determined standard. 226 B.R. at 822. Although it could be argued that the Debtor's liability for tax years 1986 and 1987, as well as his liability for tax years 1988 through 1991, was easily ascertainable and derived from a specific standard, it was also already determined, in *Weiss I*, that the Debtor's liability for tax years 1986 and 1987 was dischargeable.

In *In re Verdi*, 241 B.R. 851, 857–58 (Bankr.E.D.Pa.1999), we revisited our holding on this issue in *Berenato* and suggested that the debt limitation question, in doubtful cases, should be resolved by our first making a determination regarding the validity of any questionable claim. Here, where we already held, in *Weiss I*, that the claims arising from tax years 1986 and 1987 claims were dischargeable, the IRS should be foreclosed from arguing to us that it has a "liquidated" claim for these amounts.

Therefore, we conclude that any IRS claim in excess of the nondischargeable 1988 through 1991 tax year claims is neither noncontingent nor liquidated. Since it does not appear that the Debtor's non-dischargeable tax liability, per *Weiss I*, could likely exceed $235,000, see page 464 *supra*, we conclude that the Debtor's eligibility and confirmation of the Plan is not impaired by the debt limit.

The IRS also argued that the Debtor has not established cause for extending the term of the Plan from three years to five years in contravention of § 1322(d). In light of the fact that lengthening the term of the plan will cost the Debtor interest, the Debtor may opt to shorten the next plan and render the issue moot. If the amended plan does, however, extend beyond thirty-six (36) months, the IRS will be compensated with interest.

In *In re Capodanno*, 94 B.R. 62, 67 (Bankr.E.D.Pa.1988), we opined that "permission to extend plan-periods beyond three years should be freely given when any reasonable justification for same is articulated by the debtor." In light of the fact that the IRS will be duly compensated for any delays in payment caused by plan extension beyond three years through the remittance of additional post-petition interest, it will be hard-pressed to overcome any justification whatsoever articulated for same.

The IRS also objected to the Plan on the ground that it was not feasible, pursuant to § 1325(a)(6), and that it was not proposed in good faith, pursuant to § 1325(a)(3). As we noted in *In re Smith*, 179 B.R. 437, 448–49 (Bankr.E.D.Pa.1995), a feasibility objection, contending that a debtor lacks sufficient means to fund a plan, is basically inconsistent with a contention pursuant to § 1325(a)(4) or § 1325(b)(1)(B) that the Debtor has exces-

sive disposable income. Furthermore, here, we found that the IRS's § 1325(b)(1)(B) objection had merit. See pages 461–64 *supra.* As the feasibility requirement is generally not rigorous, *see Smith, supra,* 179 B.R. at 449–50; and *Capodanno, supra,* 94 B.R. at 64–66, it is clearly satisfied in these circumstances.

■ As for the § 1325(a)(3) requirement, the IRS apparently referenced the issue of the timing of. the payments to it under the Plan, which we have addressed and sustained on the basis of § 1322(a)(2), (b)(1) at pages 464–65 *supra.* Furthermore, as we held in *In re Gathright,* 67 B.R. 384, 387–88 (Bankr.E.D.Pa.1986), *appeal dismissed,* 71 B.R. 343 (E.D.Pa.1987), the § 1325(a)(3) requirement is limited to an inquiry into a debtor's honesty, absence of fraud or ill design, or intentional nondisclosure of material facts. *See also Verdi, supra,* 241 B.R. · at 856–57; and *In re Lilley,* 201 B.R. 725, 728–29 (Bankr. E.D.Pa.1996). None of the IRS's assertions against the Debtor, even those sustained above, rise to this level.

Therefore, none of IRS's attacks upon confirmation of the Plan other than those upheld at pages 461–65 *supra* will be sustained. We believe that, with belt-tightening which our disposable income analysis indicates lies clearly within the Debtor's power, a confirmable plan can be proposed by the Debtor.

Because it is our intention to resolve as much as we can of the confirmation issues presented by this case prior to our departure from the bench, but recognizing that the District Court's reversal of *Weiss II* may make complete resolution impossible, we have scheduled a status hearing in this case on August 23, 2000. At that time, we can at least fix a reasonable date to which the confirmation hearing can be deferred.

*D. CONCLUSION*

The following order is rendered to implement the conclusions reached in this Opinion.

*ORDER*

AND NOW, this 9th day of August, 2000, after a hearing of May 18, 2000, on the Objections ("the Objections") of the Internal Revenue Service ("the IRS") to confirmation of the Debtor's Amended Chapter 13 Plan, filed on April 20, 2000 ("the Plan"), and upon consideration of the parties' respective post-hearing submissions, it is hereby ORDERED AND DE-CREED as follows:

1. The Objections are SUSTAINED in part, as indicated in the within Opinion.

2. Confirmation of the Plan is DE-NIED.

3. A status hearing in this case is scheduled on

WEDNESDAY, AUGUST 23, 2000, AT · 9:30 A.M.

and shall be held in Bankruptcy Courtroom No. 1, Second Floor, 900 Market Street, Philadelphia, PA 19107.